1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
DONNA R. DISHBAK, SBN 259311
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone:   (310)-279-5269
Facsimile:   (310)-300-0267
E-mail:      blake@lawbl.com

Attorneys For Plaintiff
DANA WEISS AND THOSE
SIMILARLY SITUATED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DANA WEISS, an individual, and all those similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY, a California Corporation; and DOES 1 through 10,<br><br>               Defendants. | Case No. 8:18-cv-01130-JLS-GJS<br><br>Judge: Hon. Josephine L. Staton<br>Magistrate Judge: Hon. Gail J. Standish<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS OR STRIKE COMPLAINT**<br><br>Hearing Date: November 2, 2018<br>Time:       10:30 a.m.<br>Courtroom:  10A |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

1.   INTRODUCTION ................................................................1

2.   RELEVANT BACKGROUND .............................................3

   2.1.   Defendant Has Engaged In Shameless False Advertising.....3

   2.2.   Ms. Weiss' Claims Are Based On A Plausible Metabolic Explanation................................................................4

3.   ARGUMENT.....................................................................6

   3.1.   Legal Standard........................................................6

   3.2.   Weiss' Claims Are Not Lack of Substantiation Claims.......7

   3.3.   Weiss' Complaint Satisfies the Pleading Standards.............9

   3.4.   Defendant's Statements Are Not Subject To Dismissal As Puffery.................................................................10

   3.5.   A Reasonable Consumer Would Be Misled By The Product's Labeling, coupled with the product's shelf organization. ..........................................................12

   3.6   Plaintiff Has Adequately Pled Reliance In The Complaint.13

   3.7   Plaintiff Has Adequately Pled a Claim For Implied Warranty...............................................................14

   3.8   Plaintiff Has Adequately Pled a Claim For Unjust Enrichment ...........................................................15

   3.9   Plaintiff's Claims On Behalf of the Multi-State Class Should Not be ...............................................................16

Dismissed At This Time ..................................................16

      3.9.1  Plaintiff has standing to pursue her UCL claim and, thus, can properly pursue claims on behalf of a multi-state class consisting of states with similar consumer protection statutes ....................................16

      3.9.2. Defendant Is On Notice of Plaintiff's Multi-State Claims ..........................................................19

4.   CONCLUSION ...............................................................20

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Hylands Inc.*,
    2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012) ..................................... 17

*Am. Suzuki Motor Corp. v. Superior Court*,
    44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995) ..................................... 14

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678-79 (2009) ......................................................... 5

*Bradley v. Hartford Acc. & Indem. Co.*,
    30 Cal. App. 3d 818, 825 (1973) ...................................................... 9

*Bronson v. Johnson & Johnson,*
    12-4184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ........................... 11

*Brown v. Hain Celestial Grp., Inc.*,
    913 F. Supp. 2d 881, 899-900 (N.D. Cal. 2012) ......................................... 13

*Bruton v. Gerber Prods. Co.*,
    2017 WL 1396221, --- Fed.Appx. ----, No. 15-15174 (9th Cir. Apr. 19, 2017).............................................................................................................. 15

*Chudacoff v. Univ. Med. Ctr. of S. Nev.*,
    649 F.3d 1143, 1152 (9th Cir. 2011) ........................................................ 19

*Concha v. London*,
    62 F.3d 1493, 1503 (9th Cir. 1995) ................................................. 8

*Cooper v. Pickett*,
    137 F.3d 616, 627 (1998) ................................................................ 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992, 998 (9th Cir. 2010) ................................................. 6

*Davidson v. Kimberly-Clark Corp.*,
    No. 15-16173, 2017 WL 4700093, at *9 (9th Cir. Oct. 20, 2017)................. 9

*Demetriades v. Yelp, Inc.*,
    228 Cal. App. 4th 294, 311 (2014) ................................................. 9

*Farar v. Bayer AG,*
    2017 WL 5952876, at *17 (N.D. Cal. Nov. 15, 2017) ................................. 7

*Fisher v. Monster Beverage Corp.,*
    2016 U.S. App. Lexis 12608 (9th Cir. July 8, 2016).................................. 10

*Greenberg v. Target Corp.,*
    No. 17-CV-1862-RS, slip op. at **4-5 (N.D. Cal., filed Aug. 28, 2017)....... 6

*Guido v. Koopman,*
    1 Cal. App. 4th 837, 843 (1991) ................................................... 12

*Hammock v. Nutramarks, Inc.,*
    2016 WL 4761784, at *2-3 (S.D. Cal. Sept. 12, 2016) ........................... 7

*Hauter v. Zogarts,*
    534 P.2d 377, 385 (Cal. 1975)...................................................... 14

*In re Carrier IQ,*
    78 F. Supp. 3d at 1109 ............................................................. 14

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
    801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011) ..................................... 18

*In re Monumental Life Ins. Co.,*
    365 F.3d 408, 414 (5th Cir. 2004) ................................................ 18

*In re Tobacco II Cases,*
    46 Cal. 4th 298, 312 (2009) ...................................................... 12

*In re Toyota Motor Corp.,*
    754 F. Supp. 2d at 1183 ........................................................... 13

*Jenson v. Natrol, LLC,*
    No. 17-CV-03193, slip op. (N.D. Cal. Sep. 22, 2017) ............................ 6

*Johnson v. Triple Leaf Tea Inc.,*
    No. C-14-1570 MMC, 2014 WL 4744558, at *7 (N.D. Cal. Sept. 23, 2014)
    .............................................................................. 17

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939, 450 (2002) ........................................................................ 11

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120, 1145 (9th Cir. 2009) ........................................................ 8

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310, 334 (2011) ................................................................ 9, 16

*Linear Tech. Corp. v. Applied Materials, Inc.,*
    61 Cal. Rptr. 3d 221, 236–37 (Ct. App. 2007) ........................................ 8

*Mazza v. American Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ................................................................. 17

*Mexia v. Rinker Boat Co.,*
    95 Cal. Rptr. 3d 285, 289 (Ct. App. 2009) ............................................ 14

*Miller v. Ghirardelli Chocolate Co.,*
    912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) ........................................... 11

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.,*
    7 Cal. Rptr. 2d 859, 864 (Ct. App. 1992) .............................................. 12

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531, 540 (9th Cir. 1989) ........................................................... 8

*Mullins v. Direct Digital, LLC,*
    795 F.3d 654 (7th Cir. 2015) ................................................................. 16

*Mullins v. Direct Digital, LLC,*
    No. 13 CV 1829, 2014 WL 5461903, at *1 (N.D. Ill. Sept. 30, 2014)......... 16

*Mullins v. Premier Nutrition Corp.,*
    2016 WL1535057, at *3 (N.D. Cal. Apr. 15, 2016) .................................. 7

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,*
    107 Cal. App. 4th 1336, 1345 (2003) ....................................................... 6

*Peviani v. Natural Balance, Inc.,*
    774 F. Supp. 2d 1066, 1072 (S.D. Cal. 2011) ....................................... 10

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979, 985-86 (9th Cir. 2015) .......................................................... 12

*Rosales v. FitFlop USA, LLC*,
    882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) .............................................. 13

*Rubenstein v. The Neiman Marcus Group LLC*,
    No. 15-55890, 2017 WL 1381147 (9th Cir. April 18, 2017) ......................... 9

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134, 1145 (9th Cir. 2011) ........................................................... 11

*Starr v. Baca*,
    652 F.3d 1202, 1216 (9th Cir. 2011) ...................................................... 6, 10

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*,
    199 Cal. Rptr. 3d 901, 920 (Ct. App. 2016) ................................................ 12

*Turner v. Milstein*,
    103 Cal.App.2d 651, 648 (1951) ................................................................... 8

*Weinstat v. Dentsply Int'l, Inc.*,
    103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010) ......................................... 13

*Westcliffe v. Wells Fargo, N.A.*,
    No. 15-55831, 2017 BL 108346 (9th Cir. Apr. 03, 2017), *7 ...................... 15

*Williams v. Gerber Products Co.*,
    552 F.3d 934, 939 (9th Cir. 2008) ...................................................... 8, 10, 11

*Won Kyung Hwang v. Ohso Clean, Inc.*,
    C-12-06355, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) ............. 17

*Zakaria v. Gerber Prod. Co.*,
    2015 WL 4379743, at *3 (C.D. Cal. July 14, 2015) ....................................... 7

**STATUTES**

Cal. Bus. & Prof. Code §17200 ............................................................................ 18

Cal. Comm. Code § 2313 ...................................................................................... 13

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

Cal. Comm. Code § 2314 (2)(f) ................................................................. 13

California Civil Code §1750 et seq ............................................................ 18

Fla. Stat. §§817.06; 815 ........................................................................... 18

Fla. Stat. §501.201 et seq. ........................................................................ 18

Ill. Comp. Stat. 502/1, et seq. ................................................................... 18

Mass. Gen. Laws ch.93A et seq. ............................................................... 18

Mich. Stat. §445.901 et seq. ..................................................................... 18

Minn. Stat. §8.31 et seq. ........................................................................... 18

Missouri Stat. §407.010 et seq. ................................................................ 18

N.J. Rev. Stat. §56:8-1 et seq. .................................................................. 18

N.Y. Gen. Bus. Law §349 et seq. .............................................................. 18

Wash. Rev. Code. §19.86.010 et seq. ....................................................... 18

**RULES**

Fed. R. Civ P. 15(a) ................................................................................. 19

Fed. R. Civ. P. 9(b) .................................................................................... 8

Federal Rule of Civil Procedure 12(b)(6) .................................................. 5

Federal Rule of Civil Procedure Rule 8(a) ................................................. 5

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

1.   **INTRODUCTION**

In operating its fresh format grocery stores, Defendant has always aimed to achieve an edge over the more traditional grocery stores with its product offerings. In this case, Defendant crossed the line and stepped over the edge between acceptable marketing and false advertising by manufacturing, labeling, distributing, and selling drinking water that it claims is "ionized" to create the "perfect balance." Defendant sells its pH Alkaline Water for almost three times the amount it sells Trader Joe's spring water, which are shelved adjacent to one another at each of its stores across the Nation. This price differential is evidence of the boasted additional phantom "features" of alkaline water.  Defendant raises a kitchen sink of unavailing arguments to distract from its false advertising campaign and deception against consumers.  Each argument is unconvincing and should be rejected.

First, Defendant constructs a strawman, insinuating that there is a legitimate scientific dispute about whether Alkaline Water promotes better hydration than spring drinking water.  But since here, it is a medical fact that the stomach is highly acidic at a pH of 1.5 to 3.5, and that the hydrochloric acid in the stomach quickly neutralizes water before it is absorbed in the bloodstream regardless of the water's alkalinity, Plaintiff has established a plausible metabolic explanation. Plaintiff's explanation renders Defendants' "perfect balance" representation to be affirmatively false without having to review a single scientific study at the pleading stage.

At least two district courts have found that a plausible metabolic explanation excludes claims like these, from the realm of being deemed a claim of substantiation. And even when viewing the studies and articles on this topic, legitimate and independent studies almost universally reveal that alkaline water provides no added benefits, such as enhanced "hydration," and no study has ever said a water can create the "perfect balance." This is an alternative reason to reject Defendant's bogus substantiation objection.

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

In this instance, Trader Joe's business model provides a unique nationwide laboratory to test Plaintiff's plausible allegations at trial, including market data, which is often difficult to come by in false advertisement cases.  That is because unlike most retailers, Defendant advertises Alkaline Water and spring water side by side, and it doesn't market much else when it comes to water.[1] Unlike the Alkaline Water, labeling on the spring water does not claim "refresh," "hydrate," achieve the "perfect balance," nor does it have the universal symbol of health - a plus sign hologram - superimposed throughout the entire length of the on-label packaging no less than twenty times. Thus, the display and configuration of the packaging and marketing of Alkaline Water by Defendant, further evidences Defendant's deception against consumers.

Defendant also claims that misrepresentations like "refresh and hydrate" constitute non-actionable puffery, but Defendant ignores the plus symbols plastered on the labeling, and the other statements on the label which cannot be excluded at this stage.  Also, Defendant ignores recent 9th Circuit authority that rejected this very argument concerning the term "hydrate," and found such representation can be deceptive to consumers. The balance of Trader Joe's arguments disregard Plaintiff's plausible allegations, improperly contort fact questions into issues of law, and raise premature arguments such as whether the class should be comprised of a nationwide group. These issues can be addressed at class certification.

Given the price differential between spring and alkaline water, the price premium in this case should be relatively easy to certify and compute on a class basis after a fair opportunity for discovery. The Motion should be denied in full and Defendant should be ordered to answer the Complaint.

---

[1] Trader Joe's also sells mineral water.

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

2.    **RELEVANT BACKGROUND**

2.1.    **Defendant Has Engaged In Shameless False Advertising**

Defendant operates chain of grocery stores in the United States.  Plaintiff Dana Weiss pled in her CAC that Defendant engaged in a false advertising campaign concerning its "alkaline" branded water ("Product" or "Alkaline Water"). Defendant's labeling boasts that "TJ's alkaline water" is ionized to "achieve the perfect balance."  Further, the label asserts "refresh & rehydrate" with a holographic label of over twenty "+" symbols superimposed in a different color near the description of the water's benefits.  (Declaration of Blake J. Lindemann "Lindemann Decl.," **Exhibit 8**).[2]   On the back of the Product is a second label with a pH scale revealing the desired pH level of Alkaline Water compared to other implicitly inferior beverages for the purposes of promoting hydration and balance: Alkaline Water (pH 9.5+), Bottled Water (pH 7), Milk (pH 6), coffee (pH 5), some sports drinks (pH 4), and vinegar (pH 3).  (CAC, Fig. 2, p. 7).

Upon information and belief, Trader Joe's Spring Water averages a pH of 7. The pH scale on the back of the Product's labeling, coupled with the corollary lower pH level, constitutes an affirmative misrepresentation (and by omission) that the higher the alkalinity, the greater the hydration and "balance."  By scale, Defendant also affirmatively misrepresents in the pH scale (and implicitly by omission) that Alkaline Water is almost three times more hydrating than a sport drink based on its alkalinity.

Trader Joe's distributes its "Fearless Flyer" newsletter both online and in print, to thousands of customers for the purpose of marketing and advertising its products.  The Fearless Flyer newsletter is also featured online.  In the Fearless Flyer, Defendant advertises that this water will "satisfy" when one has been "sweating

---

[2] The plus symbol is universally considered the symbol of health. **Exhibit 8** is another picture of the label depicted in Figure No. 1 of the CAC, but is set forth here for a better view of the holographic effect of the plus symbols.

profusely" or there been "an abundance of corn or cranberries (foods high in acid)," and that TJ alkaline water is "water and then some." (CAC, p. 8). These are off-label advertisements that further provide a contextual inference that Alkaline Water of Trader Joe's provides more health benefits and better hydration than normal water.

In Defendant's approximate 474 nationwide stores as of 2017, Trader Joe's sells its Mountain Spring Water, side by side with its Alkaline branded Water. Complaint, Fig. No. 4, p. 8.  The Mountain Spring water carries no representations about "perfect balance," refresh or rehydrate, nor is the universal symbol for health and medicine superimposed on each bottle of the Spring Water.  But the price is sure different.  By comparison, the alkaline branded water is priced at four cents per ounce, almost three times as much as the "mountain spring water" which is one cent per ounce.  (Lindemann Decl., **Exhibit 12**).  Based on Defendant's on-label representations, off-label representations, and all of the other contextual representations made concerning the Product, Plaintiff has filed a short and plain Complaint and has asserted six California causes of action against the Defendant on June 26, 2018.

### 2.2.  Ms. Weiss' Claims Are Based On A Plausible Metabolic Explanation

Ms. Weiss has pled and established all that she must at this stage: that she was an actual consumer of Trader Joe's, that she viewed the on-label and off-label advertisements of Defendant, and subsequently bought Alkaline Water, reasonably believing it was more hydrating and would allow her to internally achieve a "perfect" pH balance and be more healthy by virtue of that "perfect" balance.  Defendant made an affirmative misrepresentation because the stomach is highly acidic and changes the character of water by the time it is absorbed into the blood stream, regardless as to what the pH of the water is. This makes the representations, both on and off the

label, to be false, because the alkalinity does not change ones "balance" or enhance "hydration" vis-à-vis normal drinking spring water.

As pled in Plaintiff's CAC, "[a]rticles and publications written by licensed Doctors and PhD's, have concluded that pH water provides no health benefit or hydration improvement." (CAC, ¶ 20). The above metabolic explanation is included in these writing, and Plaintiff's CLRA letter served on Trader Joe's prior to this lawsuit, further expounds on the explanation.[3]

Ms. Weiss's CLRA letter discusses the metabolic explanation in more detail as follows:

> As stated by Dr. Charles Mueller in Elle Magazine (http://www.elle.com/beauty/health-fitness/a32285/alkaline-water-health-benefitsclaims/): "The changes in pH in water have absolutely no bearing or effect on the much more radical changes in pH that naturally exist in your stomach and duodenum. They're meaningless. Alkaline water has absolutely no bearing on any physiologic change."
>
> Dr. Bob Arnot, M.D., a well-known author and nutritionist has stated: "say no to alkaline water, it's a scam. Your body is designed to adjust to its optimal pH balance no matter what you ingest. For instance, once alkaline water enters your stomach, your body simply pours in greater amounts of acid to neutralize it."

Lindemann Decl., **Exhibit 9**.

Numerous articles that include interviews of licensed doctors, state this metabolic explanation.  (Lindemann Decl. **Exhibits 1, 2, 6, 7, 10, 11**).  No studies need to reviewed to arrive at any conclusion about Alkaline Water.  But even viewing the scientific studies that have been completed, the legitimate and scientifically sufficient ones, have overwhelmingly concluded that Alkaline Water is not more hydrating for ordinary consumers, and in fact, may be harmful.

---

[3] Plaintiff requests that the CLRA letter be incorporated into this Motion based on the reference to the CLRA letter in the CAC.  (CAC, ¶ 31).

(Lindemann Decl., **Exhibits 3, 4, and 5**).   A recent "consumer study" which lacked any scientific basis and was paid for by the manufacturers in the alkaline water industry, concluded that some *athletes* have found alkaline water to be helpful.  But this study is contrary to the basic metabolic evaluation of alkaline water.   And notably, not one of the findings in these limited and deeply flawed "studies" suggests that one can achieve "perfect balance," one  of the on-label representations in this case.

3.   <u>**ARGUMENT**</u>

Plaintiff has presented substantial affirmative evidence that the Trader Joe's Alkaline Water health claims are literally false, and that in turn Plaintiff's price premium damages theory is tied to her liability theory. Thus, Defendant has failed to meet its initial burden, and Defendant's Motion should be denied.

### 3.1.   **Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. See *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. While the Rule 8 pleading standard requires more than mere legal conclusions, it does not require detailed factual allegations. *Iqbal,* 556 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Iqbal*, *Id*. at 679 (2009). Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not

unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### 3.2. **Weiss' Claims Are Not Lack of Substantiation Claims**

A lack-of-substantiation claim challenges a defendant's alleged failure to substantiate representations it makes about its product. Such a claim may not be advanced by a private plaintiff under California law. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003).

Ms. Weiss however, did not assert lack of substantiation claims in her CAC. Instead, she pled and put Defendant on notice, that the concept of one ingesting Alkaline Water for "perfect balance" is affirmatively false.  In Plaintiff's Consumer Legal Remedies Act ("CLRA") Letter, which is referenced and incorporated in the Complaint (CAC, ¶ 31), Ms. Weiss explained this "perfect balance" contention is affirmatively false because the body neutralizes content passing through by secreting enzymes, and thus water has its pH altered multiple times before reaching the bloodstream. Put another way, once alkaline water enters one's stomach, one's body simply pours in greater amounts of acid to neutralize it so there can be no "balancing."  (Lindemann Decl., **Exhibit 2**).

Two District Courts in California have recently concluded that a "plausible metabolic explanation" like the one given by Weiss in her tendered CLRA and CAC, appropriately constitute the assertion of an affirmative falsehood, not a substantiation claim. *Greenberg v. Target Corp.*, No. 17-CV-1862-RS, slip op. at **4-5 (N.D. Cal., filed Aug. 28, 2017); *Jenson v. Natrol, LLC*, No. 17-CV-03193, slip op. (N.D. Cal. Sep. 22, 2017).

As Judge Seeborg held in *Greenberg*:

> Greenberg's claims, however, are not lack-of-substantiation claims. He alleges the representation that Target's biotin supplements "help[] support healthy hair and skin" is affirmatively false, and alleges a

7

***plausible metabolic explanation*** for why this is so. "Defendant's health benefit representations are false, misleading and reasonably likely to deceive the public…. The human body only requires a finite amount of biotin on a daily basis for it to perform its enzymatic functions as there are a finite number of enzymes that use biotin. Once there is sufficient biotin in the body, saturation occurs and the body just does not use this surplus biotin.")

*Id.* at *5 (emphasis added).

Since Ms. Weiss has offered a plausible metabolic explanation as a reason for the affirmative misrepresentation claim, Defendant's motion to dismiss should be rejected, particularly at the Rule 12(b)(6) stage. But even ignoring basic science, recent studies disprove the representations, which also militates against characterizing this false-ad suit as a "substantiation" case.  (Lindemann Decl., **Exhibit 5**).

Several cases have held that even a dispute between studies (and there is none considering the biased and fake science behind the industry bought studies), provides fertile ground to deny a motion to dismiss.  *Zakaria v. Gerber Prod. Co.*, 2015 WL 4379743, at *3 (C.D. Cal. July 14, 2015) ("if some experts had reasonably opined that [the product] had the [advertised health benefit], this would not necessarily bar the claim.  A fact issue could remain as to what the defendant knew as to the scientific issue, including any contrary scientific opinions."); *Mullins v. Premier Nutrition Corp.*, 2016 WL1535057, at *3 (N.D. Cal. Apr. 15, 2016); *Hammock v. Nutramarks, Inc.*, 2016 WL 4761784, at *2-3 (S.D. Cal. Sept. 12, 2016); *Farar v. Bayer AG*, 2017 WL 5952876, at *17 (N.D. Cal. Nov. 15, 2017).  Third, almost none of the cases that have characterized a claim as one of "substantiation" did so at the pleading stage. And finally, ***no study*** has concluded that alkaline water will give the

consumer the "perfect balance." For all these reasons, the Motion should be denied on this ground.

### 3.3.   Weiss' Complaint Satisfies the Pleading Standards

Plaintiffs have adequately met the pleading standard. In federal court, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1145 (9th Cir. 2009). However, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008); *see also Linear Tech. Corp. v. Applied Materials, Inc.,* 61 Cal. Rptr. 3d 221, 236–37 (Ct. App. 2007). Where, as here, the reasonable consumer test applies to a Plaintiff's State claims sounding in fraud, it is a "rare situation in which granting a motion to dismiss is appropriate." *Williams*, *Id*. at 938. Plaintiff's CAC here alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support her FAL and UCL (fraudulent prong) claims.

Moreover, Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) only "requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant." *Id*.

In those cases, a "pleading is sufficient under Fed. R. Civ. P. 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore*, 885 F.2d at 540. Here, the inner workings of Defendant's false advertising campaign is within its knowledge, *Turner v. Milstein*, 103 Cal.App.2d 651, 648 (1951), and the Defendant "possesses full information concerning the facts of the controversy." *Bradley v. Hartford Acc. &*

9

*Indem. Co.*, 30 Cal. App. 3d 818, 825 (1973). Thus, Defendant can clearly prepare an adequate answer from the allegations. *Rubenstein v. The Neiman Marcus Group LLC*, No. 15-55890, 2017 WL 1381147 (9th Cir. April 18, 2017); *Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2017 WL 4700093, at *9 (9th Cir. Oct. 20, 2017).

Here, Weiss has amply plead the "who, what, where, when, and how" of the alleged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (1998). The who: Trader Joe's; the what: falsely representing that its Alkaline water creates "perfect balance" and improves hydration over normal spring water; the where: the false representation was printed on the label of the water sold by Defendant at its stores nationwide – Ms. Weiss purchased the water in Hermosa Beach; the when: at all times within the applicable statute of limitation – Ms. Weiss made her purchase on or around November 2016; the how: Alkaline Water cannot perfectly balance pH. (CAC, ¶¶ 8-31).

Had Ms. Weiss known the truth about Defendant's misrepresentations, she would not have purchased the alkaline water. As a result, Ms. Weiss suffered injury in fact and lost money at the time of purchase."); *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 334 (2011) ("a buyer forced to pay more than he or she would have is harmed at the moment of purchase"). Ms. Weiss has more than adequately pled the elements of the FAL in California.

### 3.4.   **Defendant's Statements Are Not Subject To Dismissal As Puffery**

Puffery is characterized as a statement of opinion, as opposed to a statement of fact, on which no reasonable consumer would rely. *See, e.g.*, *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014) (noting that "[a] statement is considered puffery if the claim is extremely unlikely to induce consumer reliance"). In addition, whether a statement is deemed puffery is generally considered a question of fact, not law, although there are instances in which the answer is so clear that the issue may be decided as a matter of law (*i.e.*, a reasonable trier of fact could reach only one conclusion based on the facts alleged and all reasonable inferences in favor of the

plaintiff). *See, e.g.*, *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1072 (S.D. Cal. 2011) (denying motion to dismiss with respect to defendant's argument that representations at issue constituted nonactionable puffery).

In addition, even if one isolated statement is considered puffery, the Court should "decline[d] to give [the defendant] the benefit of the doubt by dismissing the statement as puffery" when the "statement certainly contributes . . . to the deceptive context of the packaging as a whole." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).

Not a single case cited by the Defendant identifies the representations at issue in this case as "puffery." And Defendant ignores that the 9th Circuit has recently found statements about "hydration" to be deceptive. *See Fisher v. Monster Beverage Corp.*, 2016 U.S. App. Lexis 12608 (9th Cir. July 8, 2016) (reversing order dismissing case by District Court). In *Fisher*, a plaintiff alleged that Monster did not "quench thirst" or "hydrate like a sports drink." *Id.* at *3-4. The Ninth Circuit, found these allegations to be sufficient: "[a]lthough the statements upon which [plaintiffs] relied were not strictly false, it is plausible that they were misleading, which is all that California law requires." *Id.* at *4.

Given the above standards, the Court should reject Defendant's puffery and related arguments.  It is plausible that a reasonable consumer could be misled by "hydrate" and "refresh" next to 30 superimposed "+" signs, and believe that Alkaline Water provided superior hydration to Trader Joe's spring water.  In other words, "refresh" and "hydrate" representations and the plus symbols "contribute to the deceptive context" as a whole. And it is beyond cavil that achieving the "perfect balance" is not just misleading and deceptive, but false. The market supports this premise too, because Defendant sells Alkaline Water for more than three times more than the adjacent Spring Water.

The fact that there is an equally plausible interpretation in Plaintiff's favor also means that Plaintiffs survive a 12(b)(6) challenge. *See Starr v. Baca*, 652 F.3d

1202, 1216 (9th Cir. 2011) (noting that, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)[;] [p]laintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible") (emphasis in original).  Thus, Defendant's objection as to puffery, should be overruled.

### 3.5.   A Reasonable Consumer Would Be Misled By The Product's Labeling

As a matter of law, a reasonable consumer cannot be expected to know, nor did Ms. Weiss know that the alkaline water did not provide "perfect balance." *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) (under reasonable consumer standard, court cannot find no reasonable consumer would be deceived by label as a matter of law, despite statements on label that might have dispelled confusion about alleged misleading statements).

The California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id*. (*quoting Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 450 (2002)) (internal quotations omitted) (emphasis added).

"Misdescriptions of specific or absolute characteristics of a product are actionable." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 2011) (internal citations omitted).  Further, consumer deception can be ascertained from other factors.   Where defendants put phrases next to pictures to enhance the

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

messaging, a reasonable consumer is deceived. *Bronson v. Johnson & Johnson* 12-4184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) (defendant placed the phrase "like those found in fruits and vegetables" next to pictures of fresh fruit). *Id*. at *8. Here, on-label representations concerning "perfect balance," and "hydrate" and "restore" next to over thirty superimposed "+" symbols shelved next to spring water (which incluuded none of the same representations) makes the claims actionable by a reasonable consumer.  Thus, Defendant's argument that a reasonable consumer would not be misdirected, is incorrect as a matter of law.

### 3.6    Plaintiff Has Adequately Pled Reliance In The Complaint

In the sixth segment of the Defendant's kitchen sink approach, the Defendant claims that Plaintiff did not plead "reliance."  This contention is false.

Preliminarily, less detail is required to plead reliance under the laws of California than is needed to satisfy Rule 9(b), particularly when, as here, there are allegations of a pervasive, market-wide fraud. *See, e.g., Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985-86 (9th Cir. 2015) (explaining that to state a claim under California's UCL and FAL based on false advertising, "it is necessary only to show that members of the public are likely to be deceived" (*quoting In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). Also, the reasonableness of reliance is ordinarily a question of fact. *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991). Under the reliance element, the plaintiff need only demonstrate that he "would not have acted as he did if he had known of the concealed or suppressed fact." *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 199 Cal. Rptr. 3d 901, 920 (Ct. App. 2016) (*quoting Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 7 Cal. Rptr. 2d 859, 864 (Ct. App. 1992)).

The cases cited by Defendant involved circumstances where the consumer either didn't plead reliance altogether, or could not be said to have reasonably relied. Opposition, pp. 13-14.  Here, this is not the case, and the Plaintiff has demonstrated

plausibly and pled, that she would not have acted as she did if she had known of the concealed or suppressed fact.  (CAC, ¶ 8, 9, 11).

In ¶ 8 of the CAC, Plaintiff pled that she relied on the Trader Joe's claims in initially deciding to purchase the product.  Ms. Weiss next pled that she "relied" on the contentions in purchasing the product at issue.  Complaint, ¶ 9.   Finally, Ms. Weiss pled that she "relied" on the packaging in being induced to purchase the product.  CAC, ¶ 11.  Ms. Weiss has satisfied the pleading standard for reliance and Trader Joe's objection on this point, should be overruled.

### 3.7   **Plaintiff Has Adequately Pled a Claim For Implied Warranty**

Plaintiff's Complaint sufficiently pleads a claim for breach of warranty under California law.  The elements for breach of express warranty under California law are: (1) "the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." Cal. Comm. Code § 2313 (1); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899-900 (N.D. Cal. 2012) (*quoting Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010)). California's implied warranty of merchantability similarly requires that goods "[c]onform to the promises or affirmations of fact made on the container or label[.]" Cal. Comm. Code § 2314 (2)(f).

Plaintiff's Complaint satisfies each of these elements. Plaintiff alleges that the representations of "ionized to achieve perfect balance" stamped directly on the Product created a warranty to Plaintiff and the other putative class member, that the product they purchased would promote specific benefits.  (CAC, ¶ 86).   In other words, the labels are affirmations of fact or promise by the Defendant to consumers that its water does in fact have the properties promised.  *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) ("Product advertisements, brochures, or packaging can serve to create part of an express warranty.")(*quoting In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1183).  The labels therefore constitute

both express warranties and implied warranties of merchantability. Further, Defendant's labels constitute a description of the Alkaline Water and its characteristics. *Id.*; Cal. Comm. Code § 2313(1)(b). Defendant's warranties were communicated directly to Plaintiff and the other putative class members prior to their respective purchases and became part of the basis of the bargain. (CAC, ¶¶88-90).

Defendant nonetheless breached its warranties to Plaintiff and the other putative class members because the Product was not as hydrating and balanced as warranted and certainly cannot create "perfect balance." Therefore, Plaintiff's Complaint states a claim for breach of warranty, and the Motion seeking to dismiss this claim, should be denied.

Defendant also seems to challenge the specificity of the implied warranty claim, but Ms. Weiss has complied with California Law on this front. The implied warranty of merchantability arises by operation of law rather than contract. *See, e.g., Hauter v. Zogarts*, 534 P.2d 377, 385 (Cal. 1975). It guarantees not that the goods "precisely fulfill the expectation of the buyer," but instead that the goods meet "a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995) (citation omitted). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 289 (Ct. App. 2009) (citation omitted).

Plaintiff's allegations easily satisfy these requirements. The Complaint identifies some of the basic advertisements and representations concerning the Alkaline Water. The lack of any benefit render the water unfit for the purposes of balancing one's pH level. (CAC, ¶88). The Motion to Dismiss the implied warranty claim should be denied.

### 3.8    Plaintiff Has Adequately Pled a Claim For Unjust Enrichment

The Defendant cites outdated authority for the premise that unjust enrichment cannot be pled as a stand-alone action in this District. However, the Ninth Circuit has confirmed that based on the resolution before the California Supreme Court,

there is a stand-alone action for unjust enrichment in California. *Bruton v. Gerber Prods. Co.*, 2017 WL 1396221, --- Fed.Appx. ----, No. 15-15174 (9th Cir. Apr. 19, 2017); *see also 1617  Westcliffe v. Wells Fargo, N.A.*, No. 15-55831, 2017 BL 108346 (9th Cir. Apr. 03, 2017), *7 (equitable cause of action with restitution as a remedy).   In order to state an unjust enrichment claim against the Defendants, Plaintiffs must plausibly allege that each Defendant was unjustly enriched at plaintiff's expense. See, e.g., Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability….")

Here, unlike the authority cited by Defendant, there is a clear price premium amount by which Defendant has been unjustly enriched.  This is evidenced by market factors and the comparative pricing by Trader Joe's of Spring Water less than 1/3 the mount of Alkaline Water.  Plaintiff has adequately pled an unjust enrichment claim.

### 3.9  Plaintiff's Claims On Behalf of the Multi-State Class Should Not be Dismissed At This Time

#### 3.9.1  Plaintiff has standing to pursue her UCL claim and, thus, can properly pursue claims on behalf of a multi-state class consisting of states with similar consumer protection statutes

Plaintiff selected other class states based on the similarity of these states' consumer protection laws to the UCL so that a determination that Defendant violated the UCL will necessarily mean Defendant violated the laws of these other states. Defendant has not challenged the similarity of the Class states' laws to the UCL. Instead, Defendant argues that the multi-state class should be dismissed as to all non-California residents because Plaintiff has failed to demonstrate standing under the laws of these other states. (Motion to Dismiss, at 16-17). Defendants' argument fails for several reasons.

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

First, because Plaintiff was injured when she bought the Product, she has standing to bring her UCL claim. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 334 (2011) ("any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition" has standing to pursue a claim under the UCL) (internal citations omitted).

Second, Plaintiff is not bringing her claims under the other states' consumer fraud statutes. Thus, the question Defendant poses of whether Plaintiff has standing to pursue her claims under those laws is a red herring. The applicable questions are one – whether, pursuant to Rule 23, Plaintiff's claims are typical of and she is an adequate class representative for persons who are similarly situated to her. At the motion to dismiss stage, the court must assume that purchasers in these other states who have been injured by Defendant's common course of conduct are similarly situated to Plaintiff. *See Manzarek*, 519 F.3d at 1031 (on a motion to dismiss, the district court accepts as true a plaintiff's well pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff.) And, two – whether, under Rule 23, the other states' laws are sufficiently similar to the UCL such that there will be no manageability problems if a class is certified and tried on behalf of all of these persons. This is a Rule 23 question that should be decided, based upon a full record, in connection with the class certification process.

Further, for these very reasons multi-state classes with consumer fraud laws substantially identical to the UCL have been found proper. In fact, a district court recently certified, which was affirmed on appeal, a multi-state consumer fraud class action, represented by one named plaintiff from Illinois, that includes many states sought to be included here, including California. *Mullins v. Direct Digital, LLC*, No. 13 CV 1829, 2014 WL 5461903, at *1 (N.D. Ill. Sept. 30, 2014) *aff'd Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015). And, because whether the law of any of these states presents a substantial substantive conflict with California law

such that it would not be manageable depends on the "facts and circumstances" of each case, it is not a question that can or should be resolved on a motion to dismiss.

In *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), the Ninth Circuit made clear that whether a multi-state class is properly certified must be determined upon the "facts and circumstances" of each case. *Id.* at 594; *see also Allen v. Hylands Inc.*, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012) ("…*Mazza* explicitly left open the possibility that a court could certify subclasses grouped around 'materially different bodies of state law'"). Importantly, as previously noted, Defendants do not argue that the UCL materially differs from the laws of the states identified in the CAC under the "facts and circumstances" of this specific case. For this reason alone, Defendant's motion to dismiss the multi-state UCL class allegations should be denied.  Moreover, as the foregoing demonstrates, any such analysis would be premature.  No scheduling order has been entered in this case, no deadline to add parties or amend has been set and this case is in its early stages.

This is a conflict of law analysis – not a standing issue – and it should await discovery and be decided on a full record at the class certification stage. *See, e.g.*, *Johnson v. Triple Leaf Tea Inc.*, No. C-14-1570 MMC, 2014 WL 4744558, at *7 (N.D. Cal. Sept. 23, 2014) ("to the extent defendant seeks an order limiting the class definition on the asserted ground that it is 'an out-of-state company' (*see id.*), the Court finds defendant's argument premature at the pleading stage."); *see also Won Kyung Hwang v. Ohso Clean, Inc.*, C-12-06355, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (a detailed choice-of-law analysis "is most appropriate at the class certification stage of the case, after the parties have engaged in discovery"); *Henderson*, 2011 WL 1362188, at *14 ("Plaintiffs are correct that this is an issue which concerns the makeup of the class, does not challenge the legal sufficiency of Plaintiffs' claims, and is better addressed after further discovery, within the context of a motion to certify the class."); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011) (rejecting defendants' motion to dismiss

claims brought under the laws of states in which the named plaintiffs do not reside

and holding that the issue is one to be determined at class certification).

3.9.2. <u>Defendant Is On Notice of Plaintiff's Multi-State Claims</u>

Far from providing no insight regarding the multi-state class she seeks,

Plaintiff specifically identifies the several states included in the proposed Multi-State

Class:

> *UCL-Multistate Class*: All persons who, within the applicable
> statute of limitations period, purchased Trader Joe Alkaline Water in
> States with UCL or comparative consumer protection statutes, until
> the date notice is disseminated.

(CAC, ¶ 32). Further, in Plaintiff's initial Complaint, she listed each of the specific

unfair and deceptive trade practices laws in each of those states that she is alleging

are similar to the law in California and which she alleges Defendants violated based

on their deceptive sales of Trader Joe's Alkaline Water. (*See* CAC, ¶ 58), (alleging

that Defendant violated the laws prohibiting unfair and deceptive trade practices of

the states and territories wherein Class members reside, including without limitation:

Cal. Bus. & Prof. Code §17200 et seq.; California Civil Code §1750 et seq.; Fla.

Stat. §501.201 et seq.; Fla. Stat. §§817.06; 815 Ill. Comp. Stat. 502/1, et seq.; Mass.

Gen. Laws ch.93A et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §8.31 et seq.;

Missouri Stat. §407.010 et seq.; N.J. Rev. Stat. §56:8-1 et seq.; N.Y. Gen. Bus. Law

§349 et seq.; and Wash. Rev. Code. §19.86.010 et seq.).

Indeed, in its Motion, Defendant acknowledged that it is on notice that

Plaintiff has alleged a multistate class consisting of the states included in the class

definition. Nothing more is required. *In re Monumental Life Ins. Co.*, 365 F.3d 408,

414 (5th Cir. 2004) (rejecting an "overly formalistic" approach to class definitions

and stating: "[H]olding plaintiffs to the plain language of their definition would

ignore the ongoing refinement and give-and-take inherent in class action litigation,

particularly in the formation of a workable class definition."). Defendant is also on notice of the nature of the claims against it.  For all of these reasons, it is premature to enter an Order as to the constituency of the class.

4.    **CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. In the alternative, leave should be granted to amend.  To date, Plaintiff has not amended her CAC.  Under Fed. R. Civ P. 15(a), leave to amend a party's pleading "should [be] freely give[n] ... when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

Respectfully submitted,

Date:    October 12, 2018

LINDEMANN LAW FIRM, APC
BLAKE J. LINDEMANN

By:  /s/ *Blake J. Lindemann*

Blake J. Lindemann
ATTORNEYS FOR PLAINTIFF
DANA WEISS AND ALL THOSE
SIMILARLY SITUATED

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS

**PROOF OF SERVICE**

I, the undersigned, declare: I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210.

On October 12, 2018, I served the foregoing document as follows:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS OR STRIKE COMPLAINT**

[X] by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such electronic filing to counsel of record for all parties by operation of the Court's CM/ECF System.

[  ] by U.S. Mail in the ordinary course of business to the non-CM/ECF participants indicated on the attached Manual Notice List. I am readily familiar with the Firm's practice for the collection and processing of correspondence for mailing with the Postal Service and that the correspondence would be deposited with same that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on October 12, 2018, at Beverly Hills, California.


By: */s/ Nataly Grande*
Nataly Grande

MEMORANDUM OF P&A ISO OPPOSITION TO MOTION TO DISMISS