**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
DONNA R. DISHBAK, SBN 259311
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone:   (310)-279-5269
Facsimile:   (310)-300-0267
E-mail:     blake@lawbl.com

Attorneys For Plaintiff
DANA WEISS AND ALL THOSE
SIMILARLY SITUATED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DANA WEISS, an individual, and all others similarly situated, | Case No. 8:18-cv-01130-JLS-GJS |
| Plaintiff, | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| vs. | |
| TRADER JOE'S COMPANY, a California Corporation; and DOES 1 through 10, | [DEMAND FOR JURY TRIAL] |
| Defendants. | |

**INTRODUCTION**

1.     Plaintiff Dana Weiss ("Plaintiff") brings this action individually and on behalf of a proposed class and subclass ("Class" or "Classes"), as more fully defined below, of similarly situated persons nationwide or in California, seeking to redress the pervasive pattern of fraudulent, deceptive, and false and otherwise improper advertising, sales and marketing practices that the Defendants (as later defined) have engaged in with regarded to their "alkaline" water ("Product" or "Trader Joe's Alkaline Water"). As more fully stated herein, Defendants' schemes or artifices to deceive and mislead Plaintiff and other members of the proposed Classes including Plaintiff and other members of the proposed Classes, into purchasing, at a premium price, tens of millions of dollars' worth of water, which are distributed, marketed, advertised, and or sold by Defendants.

2.     On November 20, 2018, the Court entered its Order Granting Defendant's Motion to Dismiss ("Order") Plaintiff's Original Class Action Complaint. (Dkt. No. 23). The Court concluded that this First Amended Complaint ("FAC") may not be based on "any alleged misrepresentation that the Court concluded was nonactionable as a matter of law." Order, p. 17. Because Plaintiff interprets the spirit of the Order as permitting a limited basis to amend, Plaintiff makes an offering of additional allegations at ¶¶23-64 solely to preserve the record, and to avoid any legal argument that the perceived basis of leave to amend had been misconstrued. Allegations ¶¶23-64 are relevant to disposition of this case only to the extent the Court has already considered them, and rejected them in not permitting Plaintiff even one opportunity to amend.[1]

---

[1] Since the Court concluded in the Order that Plaintiff could not amend her pleading by briefs in Opposition to Motion to Dismiss, it is unclear if all plausible allegations were considered in denying leave to amend or certain contentions were rejected for procedural reasons. Order, p. 7. Plaintiff reserves the right to seek leave to amend.

3.      Plaintiff also offers amended allegations concerning those amendments concerning representation of pH of 9.5+ at ¶¶65-75.

4.      Defendants have repeatedly violated the consumer protection statutes referred to herein by making deceptive promotional claims about their alkaline water products, claims that are false and misleading by competent, reliable scientific evidence. Defendants have claimed that their water is "ionized to achieve the perfect balance," "refresh and hydrate" with hundreds of plus symbols superimposed on the packaging, a universal sign of gaining health, when in reality the Product is no different than drinking any bottled water or tap water.  The make-up of Trader Joe's Alkaline Water does not provide any of the benefits Defendants say it does.

5.      Defendants prey on consumers by misleadingly claiming that the Product is of alkalinity greater than 9.5+ and is ionized to achieve the perfect balance.

6.      There is no plausible metabolic explanation that the water is "perfectly balanced."  In fact, whether balance refers to one's body or the water, this water is not "balanced."  The more likely explanation, that this refers to the body, is simply untrue as a matter of science.  The water is also not perfectly balanced because the ions are increased to 7.5, to 8.5, to 9.5 to 10.5 with the use of electrolysis and thus, this Product is not "alkaline water" that promotes any plausible sense of balance.

7.      In the alternative, there is no genuine scientific research and there are no scientifically reliable studies in existence that support the extraordinary claims of Defendants, or that alkaline branded water provide a superior benefit to a consumer. Defendants for their part, do not contend that the Product is "clinically tested" so this is not a substantiation averment in the alternative. Aside from this false health claim, there is no reliable scientific evidence that the water gives a consumer scientific "balance." Even if there are any reports, they are subject to reasonable critique, such that the reports are not reliable, and there is at minimum a reasonable and material dispute of fact.  Defendants know or should have known, that there is no greater

3

benefit to ingesting Trader Joe's Alkaline Water alkaline water than ingesting an equivalent bottled water or tap water, and that its advertising and marketing practices would lead the reasonable consumer to believe that Trader Joe's Alkaline Water is a superior product to other waters.  Moreover, Trader Joe's Alkaline Water has taken no meaningful steps to clear up consumer misconceptions regarding its alkaline branded water Product.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1711, et. seq., the Class Action Fairness Act of 2005 because (i) there are 100 or more Class Members, (ii) upon information and belief there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

9.     For the subclass, the Court has original jurisdiction over CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

10.     Venue is proper in this district under 28 U.S.C. § 1391 because Defendants continuously conduct business in this district and a substantial part of the events giving rise to these claims occurred in the Central District of California; Defendants and/or their agents are doing business in California; and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

## PARTIES

11.     Plaintiff Dana Weiss is, and at all times mentioned herein, was a resident of the State of California. Beginning on or about November of 2016, Plaintiff has purchased the Alkaline Water. In initially deciding to purchase the Trader Joe Alkaline water, Plaintiff relied on Trader Joe's claims that the Product was of a pH of greater than 9.5, and that it was ionized to help her achieve perfect "balance." Plaintiff thereafter purchased the Trader Joe Alkaline Water ("Product").  Plaintiff typically

purchased the Trader Joe's Alkaline Water at the Trader Joe's in Manhattan Beach, Store No. 106. Ms. Weiss will be unable to rely on the Product's advertising or labeling in the future based on its level of deception. Even though Ms. Weiss would like to purchase the Product, she cannot purchase the Product in the future based on the current labeling.

12. When purchasing the Product, Ms. Weiss was seeking a product that would balance pH internally, and she relied on this contention. Ms. Weiss also thought that the Product was greater than a pH of 9.5+

13. The labeling of the Product, however, was misleading, and had the capacity, tendency, and likelihood to confuse or confound Ms. Weiss and other consumers acting reasonably (including the putative class), as described in detail herein.

14. Ms. Weiss acted reasonably in relying on Trader Joe's Claims, which Trader Joe's intentionally placed on the Product labels with the intent to induce ordinary consumers into purchasing the Product.

15. The Product cost more than similar products without misleading labeling, even the water shelved right next to the alkaline water at Trader Joe's, and would have cost less absent the false and/or misleading claims.

16. If Trader Joe's was enjoined from making the claims, the market demand and price for its Product would drop, as it has been artificially and fraudulently inflated due to Trader Joe's use of deceptive labeling.

17. Ms. Weiss paid more for the Product, and would only have been willing to pay less, or unwilling to purchase them at all, absent the misleading claims complained of herein.

18. For these reasons, the Product was worth less than what Ms. Weiss paid for it, and may have been worth nothing at all.

19.     Defendant Trader Joe's Company ("Trader Joe's") is a privately-held corporation organized and existing under the laws of the State of California with its principal place of business at 800 S. Shamrock Avenue, Monrovia, CA 91016. Trader Joe's manufactured, marketed, distributed, and advertised and sold Trader Joe's Alkaline water at all times relevant hereto. Trader Joe's sells hundreds of thousands of bottles water per week in the United States. Its annual sales for the sale of the product are in the millions.

20.     Plaintiff is ignorant of the true identities and capacities of fictitiously named defendants designated as Does 1-10, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every Doe defendant is in some manner responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

21.     Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, all of the defendants together were members of a single unincorporated association, with each member exercising control over the operations of the association. Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, each of the defendants was the agent, associate, employee and/or representative of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the authorized course and scope of this agency, association and employment with the full knowledge and consent of the remaining defendants. Plaintiff is further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with

FIRST AMENDED COMPLAINT – CLASS ACTION

full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

22.    Plaintiff is informed and believes and thereon alleges that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this complaint. The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiff of her constitutionally protected rights to property, and of her rights under other laws as set forth herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiff by the defendants as a consequence.

## ADDITIONAL FACTS

23.    Attached as **Exhibit 1** is a true and correct copy of ABC News article titled, "Alkaline Water Claims to Offer Greater Hydration, Health Benefits." https://abcnews.go.com/Health/alkaline-water-claims-offer-greater-hydration-health-benefits/story?id=33268980.

24.    Attached as **Exhibit 2** is a true and correct copy of the New York Times article titled, "Is Alkaline Water Really Better for You?" https://www.nytimes.com/2018/04/27/well/eat/alkaline-water-health-benefits.html.

25.    Attached as **Exhibit 3** is a true and correct copy of study titled, "Systemic Review of the Association Between Dietary Acid Load, Alkaline Water and Cancer." https://bmjopen.bmj.com/content/6/6/e010438.

26.    Attached as **Exhibit 4** is a true and correct copy of a study titled, "Influence of Alkaline Ionized Water on Rat Erythrocyte Hexokinase Activity and Myocardium." https://ci.nii.ac.jp/els/contentscinii_20181013060333.pdf?id=ART0001944400.

27.    Attached as **Exhibit 5** is a true and correct copy of a study titled, "Systemic and local effects of long-term exposure to alkaline drinking water in rats." https://www.ncbi.nlm.nih.gov/pubmed/11493345.

FIRST AMENDED COMPLAINT – CLASS ACTION

28.     Attached as **Exhibit 6** is a true and correct copy of article titled, "Alkaline Water—Find or Fraud?" https://cspinet.org/tip/alkaline-water%E2%80%94find-or-fraud.

29.     Attached as **Exhibit 7** is a true and correct copy of article titled, "Does Alkaline Water Really Hydrate You Better." https://www.wellandgood.com/good-advice/is-alkaline-water-more-hydrating-regular-water/.

30.     Attached as **Exhibit 8** is a true and correct copy of an image of Trader Joe's Alkaline Water labeling.

31.     Attached as **Exhibit 9** is a true and correct copy of the Notice of Violation of the California Consumer Legal Remedies Act and Duty to Preserve Evidence that was sent to Defendant Trader Joe's via certified mail on November 11, 2017.

32.     Attached as **Exhibit 10** is a true and correct copy of article titled, "I Drank Fancy Water for a Week so you Don't Have to." https://www.elle.com/beauty/health-fitness/a32285/alkaline-water-health-benefits-claims/.

33.     Attached as **Exhibit 11** is a true and correct copy of article titled, "Huge Number of People Believe Drinking Alkalinized Water Prevents Diseases: Are They Right?" https://www.alternet.org/print/personal-health/huge-number-people-believe-drinking-alkalinized-water-prevents-diseases-are-they.

34.     Attached as **Exhibit 12** is a true and correct copy of images reflecting the price of Trader Joe's Alkaline Water compared to that of Trader Joe's Spring Mountain Water.

35.     Attached as **Exhibit 13** is the venue form for the filing of this Class Action.

36.     With the high number of studies, articles, and publications by accredited doctors and scientists warning consumers of the affirmatively false statement by

alkaline water proprietors such as Trader Joe's, a reasonable consumer could be deceived by Trader Joe's Alkaline Water.

37.    Defendant advertises that its alkaline water is "ionized to achieve the perfect balance."

38.    Water with a pH of 9.5 or greater is by definition, not balanced.

39.    A pH of 9.5 or greater cannot be considered by the consumer to represent a perfect balance.  As reflected on the Product's label and the scale on the back of the Product's packaging, balanced pH is in the neutral range for "bottled water."

40.    Water with a pH that ranges from 10.5 to 11.5 to 12.5 to 13.5, is not "perfectly balanced."

41.    "Ionized" is referred to in past tense suggesting that the water has already been chemically altered. Thus, to "achieve" the perfect balance refers to the consumer's internal pH balance.

42.    "Achieve" is a transitive verb which matches with a consumer's expectations here, defined commonly, as "to get or attain as the result of exertion."

43.    All reasonable inferences suggest that the "perfect balance" promised to be achieved, is the resulting pH balance a person benefits from by consuming the Product.   This is at minimum, a dispute of fact.

44.    That Defendant has claimed that this is a substantiation claim independently defeats its argument that "ionized to achieve the perfect balance" can possibly refer to the chemical make-up of the water; if the statement is characterized as a substantiation claim, the Defendant is equitably estopped from claiming the Product is not referring to the health benefits that may accrue to a person.

45.    *Plaintiff's claims are not substantiation claims*: Plaintiff has not alleged that the product is clinically tested, nor that any representation falsely implies that the marketing claims were "clinically proven" by scientific proof, the only matter at issue in *Kwan v. Sanmedica, Int'l*, 854 F.3d 1088 (9th Cir. 2017).

46.     Defendant does not represent its product is clinically proven as either a performance based claim, nor a health based claim, so this is not a substantiation claim. Instead, Plaintiff offers in her Complaint and CLRA letter, a plausible metabolic explanation that "ionized to achieve the perfect balance" is affirmatively false because water high in alkalinity cannot improve one's internal pH balance, and certainly cannot achieve the perfect balance. Plaintiff contends in the alternative, that several studies have concluded that a pH balance has no beneficial impact on the alkalinity balance in the blood constituting at minimum, a material dispute of fact. Plaintiff is entitled to plead in the alternative.

47.     "Ionized to achieve the perfect balance" is affirmatively false because once alkaline water enters one's stomach, the body simply pours in greater amounts of acid to neutralize the water, such that no "balance" can possibly be created, and no "perfect balance" can possibly be created.

48.     "Ionized to achieve the perfect balance," in paragraph 46, is affirmatively a false statement, independent and irrespective of whether there is no scientific support.

49.     Coupled with the false "balance" claim, "hydrate and refresh" contribute to the deceptive context of this packaging.

50.     Hydration is critical for health, but according to the World-renowned Cleveland Clinic specializing in cardiology, alkaline waters, which implies among others, Trader Joe's Product, do not have any added health benefits. https://health.clevelandclinic.org/alkaline-water-dont-believe-the-marketing-hype/.

51.     That the Product "hydrates and refreshes" is affirmatively false because ingestion and consumption of the Product leads to negative consequences to ones health, including growth retardation. *See Exhibit* 5. A 1998 study also found that alkaline water can lead to heart muscle damage in laboratory rats (Journal of

Toxicological Sciences).  Upon information and belief, these conclusion plausibly apply to human ingestion.

52.   Alkaline water, generally, and this Product, can  agitate the body's normal pH leading to metabolic alkalosis, a condition producing the following symptoms: nausea, vomiting, hand tremors, muscle twitching, tingling in the extremities or face, confusion.

53.   Alkaline water, generally, and this Product, also interfere with digestion of proteins.

54.   Trader Joe's also makes an affirmatively false representation that the Product is "Alkaline Water" when in fact, electrolysis alone (the method Trader Joe's employs to create a higher pH) that results in higher pH, does not make water more alkaline.   https://www.uswatersystems.com/blog/2017/08/scientists-say-dont-be-duped-by-alkaline-water/ (**"**The only thing that neutralizes acid is alkalinity, not the water being alkaline*. **So let me rephrase that: Alkaline water does not mean that it has substantial alkalinity.** There must be alkaline minerals in the water — to begin with — in order to produce alkalinity in your water.").  Mark Timmons authored this article who is Certified by The Water Quality Association as a CWS-VI, CI, CSR and has held these certifications since 1980.  The "Fearless Flyer" confirms the Product is run through electric currents (electrolysis).

55.   Trader Joe's scale on the back of the Product is also affirmatively false for the same reason in that Trader Joe's represents the "higher the pH, the greater the alkalinity" when in fact as opined by several experts in the field, higher pH does not mean substantial alkalinity.

56.   The contention that the Product can be "ionized to achieve a perfect balance" is also affirmatively false because:

> (a) "ionized water" is nothing more than sales fiction; the term is meaningless to chemists;

(b) Pure water (that is, water containing no dissolved ions) is too unconductive to undergo significant electrolysis by "water ionizer" devices;

(c) Pure water can never be alkaline or acidic, nor can it be made so by electrolysis. Alkaline water must contain metallic ions of some kind – most commonly sodium, calcium, or magnesium;

(d) The idea that one must consume alkaline water to neutralize the effects of acidic foods is ridiculous; we get rid of excess acid by exhaling carbon dioxide;

(e) If you do drink alkaline water, is alkalinity is quickly removed by the highly acidic gastric fluid in the stomach [plausible metabolic explanation];

(f) Uptake of water occurs mainly in the intestine, not in the stomach. But when stomach contents enter the intestine, they are neutralized and made alkaline by the pancreatic secretions – so all the water you drink eventually becomes alkaline anyway."

http://www.chem1.com/CQ/ionbunk.html.

57. The scale on the back of the Product is affirmatively false because many sources for tap water are composed of a pH greater than 7, and even at pH of 9, naturally, whereas the consumer is led to believe through the scale, the Product provides benefits, in reality, it does not.

58. All of the specific on-label claims contribute to the deceptive context of the representation, to "achieve a perfect balance." The notion that this "alkaline water" hydrates and refreshes, and provides medical properties is a performance based claim that contributes to the balance claim.

59. A California plaintiff can bring claims on a nationwide basis. *Gitson v. Trader Joe's*, 63 F. Supp.3d 1114 (N.D. Cal. 2014).

60.     Ms. Weiss relied on all of the representations in the Fearless Flyer (off-label) and all those representations made by Defendants on the label in deciding to purchase the Product as referenced in the factual section of this Complaint.

61.     Members of the public are likely to be deceived based on a significant, diverse, and widespread consensus of licensed doctors, chemists, and PhD scientists asserting alkaline water like Trader Joe's Product, is effectively snake oil.

62.     Plaintiff (and class members) would not have acted as they did in buying the Product if they had known of the concealed or suppressed facts above; they would have bought ordinary bottled water.

63.     Many consumers have consumed alkaline water based on the belief it will help balance their diets from eating foods high in acid, like the Fearless Flyer and the on label advertisements suggest. https://abc11.com/health/alkaline-water-has-no-proven-benefits-expert-says/1458290/.

64.     For all these reasons, and those demonstrated through the course of this case, reliance is reasonable and plausible.

65.     Plaintiff observed and tested that the Product had a pH level of less than 9.5 one week after she purchased the Product in November of 2016.

66.     The testing was performed at the Plaintiff's residence.  The Plaintiff also tested tap water.  The test results were Trader Joe's Alkaline Water at 7.3 pH, and tap water 7.1 pH.

67.     The Plaintiff tested the Product using an appropriate device for ascertaining the pH of liquid substances, a PH-02 "pen type pH meter" made by manufacturer, Zacro.  Plaintiff tested more than once.

68.     Most of the reviewers who tested Trader Joe's Product found it to be at a pH of 6, which is acidic. http://www.lifeionizers.com/blog/trader-joes-alkaline-water-fails-test-at-9-5-ph/.

69.     Plaintiff could not have tested the Product when it was bottled because the water is bottled on private property that is not open to the public or available to Plaintiff unless through discovery.

70.     Plaintiff has requested, but has not received, discovery responsive to the inquiry as to whether the Product lacked the 9.5+ representation on a class-wide basis.

71.     Based on reviews surveyed in the public domain, articles, and her own personal testing, Plaintiff asserts upon information and belief, that Trader Joe's did not meet this representation on a class-wide basis, at least during some periods.

72.     Plaintiff is unable to conduct expert testing and prepare an expert report on these contentions until she is granted access to the source of production, she receives all test reports and results from the Defendants.  Then Plaintiff's expert can also test the degradation of alkaline water, which occurs over time, and after the water is bottled.  Degradation of pH ions is an accepted fact, such that the longer the Product sits, the more pH will be lost.

73.     The "9.5+" representation is implied to the consumer that such alkalinity will last for a reasonable time through consumption, as there is no counter-inference or designation on the bottle such as "good if used through [date]."

74.     A reasonable consumer will believe that the Product will maintain its alkalinity a reasonable time after it is sourced and manufactured through point of purchase, and a reasonable amount of time thereafter for consumption.

75.     Plaintiff relied on this representation when she purchased the Product.  In actuality, the representation was false.

## **TRADER JOE'S ALKALINE WATER**

76.     Articles and publications written by licensed Doctors and PhD's, have concluded that pH water is affirmatively false because it is a medical impossibility.

77.     In the alternative, articles and publications suggest that Alkaline Water provides no health benefit or hydration improvement.

78.     Trader Joe's Product falsely and misleadingly represents: "Trader Joe's "Alkaline Water," "ionized to achieve the perfect balance." Next, Trader Joe's falsely claims "pH 9.5+" "pH is the measure of acidity and alkalinity. The higher the pH, the greater the alkalinity."  Further "Our Alkaline Water + Electrolytes is ionized to pH 9.5+." These particular statements were made on the packaging of the Product in Figure No. 1 and Figure No. 2.

FIGURE NO. 1                              FIGURE NO. 2 (Reverse side of packaging)



79.     In addition, there are hundreds of plus symbols on the packaging next to a statement "refresh and hydrate" connoting non-existent health benefits.  On Trader Joe's website, and on its product catalogue mailed and disseminated to millions (including Plaintiff), Trader Joe's made the false and misleading claims: "The mineralized water is purified through reverse osmosis, then run through electric currents (electrolysis), which changes the structure of the water and raises the pH to

9.5+ (neutral pH of water is 7)."  Moreover, in the same marketing materials, Trader Joe's represented "[w]hether you've just eaten an abundance of corn or cranberries (foods high in acid); or you've been sweating profusely; and/or you've been reading this Flyer (because obviously that would make you thirsty) our Alkaline Water + Electrolytes is a drink that can satisfy." *See* Fig. 3.  At each Trader Joe's store, Trader Joe's stacks its alkaline water product adjacent to the non-alkaline water product to obtain a price premium based on the representations therein.  *See* Fig. 4.

FIGURE NO. 3

FIGURE NO. 4.



80.    The Defendants did not undertake any study before marketing their product and have not claimed to have done so.  Thus, this is not a substantiation claim. Defendants do not have a single study to show that their water is "perfectly balanced" or will provide added hydration compared to other water, so this is not a substantiation claim.  Defendants do not contend that the Product is clinically tested, so this is not a substantiation claim.  In addition, Defendants' product does not even maintain or have alkalinity represented on the packaging of 9.5+ when bottled or sold.  The Product is more acidic than as represented.

81.    Such deceptive conduct and practices mean that Defendants' advertising and marketing is not just puffery, but is instead deceptive and is therefore, actionable.

82.    Defendants take advantage of every marketing avenue the modern age has opened to them in order to ensure that the false and deceptive marketing message permeates the general consumer consciousness.  Defendants use advertising, internet marketing, and social media, as well as glossy print through the "Fearless Flyer." But no matter which marketing avenue reaches a consumer, Defendants' drive home the

same false and deceptive claims of superior results from drinking alkaline branded water through all the advertising mediums vis-à-vis normally sourced water.

83.     However, even though there is no plausible metabolic explanation for a claim that alkaline branded water provides any more benefit to a consumer than typical water, or that they can hydrate, or that they can provide the "perfect balance," the Defendants persistently and pervasively market their product  as one that "achieve the perfect balance," supposedly worthy of a premium price over other bottled water. An ounce of Trader Joe's alkaline water costs significantly more than an ounce of Trader Joe's Springwater, which is marketed adjacent to alkaline water at every Trader Joe's store in the Nation. *See Figure No. 4 above.*

84.     As a result of the foregoing, Defendants' claims regarding Trader Joe's Alkaline water are deceptive and misleading.  Had Plaintiff and other members of the proposed Classes been aware of the truth about Trader Joe's Alkaline Water, they would not have purchased Trader Joe's Alkaline Water, and would not have paid a premium price for the Trader Joe's Alkaline Water.

85.     Indeed, Defendants were in a superior position to know and did know that its claims and advertisements were deceptive and false and they failed to inform consumers that their Trader Joe's Alkaline branded water cannot perform as advertised and promised.

86.     Instead, Defendants allow their deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate Defendants' false claims and promises.

87.     Defendants were also in a superior position to know about the alkalinity of its water at the date of sourcing, distribution, purchase, and intended consumption.

88.     Because of such deceptive practices and conduct, Defendants are able to charge and get a substantial premium for their products over readily available and much lower priced sources of water that provide the same or substantially the same

results. Thus, Defendants reap profits on products where consumers are induced to pay an unwarranted, substantial premium.

89.    All conditions precedent necessary for filing of this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendants. Plaintiff has served a letter on the Defendants under Consumer Legal Rights Act prior to commencing this action, which is attached to this FAC.

## CLASS ACTION ALLEGATIONS

90.    Plaintiff brings this action on behalf of herself and on behalf of a Nationwide Class and California Subclass of other similarly situated persons pursuant to Fed. R. Civ. Proc. 23(a), 23(b)(2), and/or 23(b)(3).    Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed.   The proposed Classes are as follows:

*UCL-Multistate Class*: All persons who, within the applicable statute of limitations period, purchased Trader Joe Alkaline Water in States with UCL or comparative consumer protection statutes, until the date notice is disseminated.

*California Subclass*: All California persons who, within the applicable statute of limitations period, purchased Trader Joe Alkaline Water until the date notice is disseminated.

91.    Excluded from the Classes are (1) Defendants, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which Defendants have a controlling interest; (2) the Judge to whom this case is assigned and any member of the Judge's immediate family; (3) anyone who purchased the Trader Joe's Alkaline Water branded bottled water for the purpose of resale; (4) anyone asserting a claim for personal injury.  Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

92.    This action has been brought and may be properly maintained as a class

action pursuant to Fed. R. Civ. Proc. 23 and case law thereunder.

93.     **Numerosity**: The members of the Classes are so numerous that joinder of all members is impracticable.  Plaintiff reasonably believes that the Classes are comprised of tens of thousands of consumers throughout the United States.

94.     **Commonality**:  Common questions of law and fact exist as to all members of the Classes.  These common questions predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to the following:

- whether Defendants' claims regarding Trader Joe's Alkaline Water brand water are deceptive and misleading;
- whether Defendants engaged in false and misleading advertising;
- whether Defendants' conduct as alleged herein violates the California Consumer Legal Remedies Act and California's unfair competition law;
- whether Defendants' conduct as alleged herein constitutes a breach of warranty;
- whether Defendants' conduct as alleged herein constitutes unjust enrichment;
- whether Plaintiff and the class members have sustained monetary loss and the proper measure of that loss; and
- whether Plaintiff and the Class members are entitled to declaratory relief.

These and other questions of law and fact which are common to the members of the Class and predominate over any questions affecting only individual members of the Class.

95.     **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendants' wrongful

conduct.  Plaintiff, like other members of the Classes, purchased the Trader Joe's Alkaline branded water after exposure to the same material misrepresentations and/or omissions appearing on the product packaging and on or in Defendants' marketing and advertising, and received a product that was not represented.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Classes.

96.  **Adequacy**:  Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class.  Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

97.  Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions.  Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class.

98.  This suit may be maintained as a class action under Fed. R. Civ. Pro. 23(b)(2) because Defendants have acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  Specifically, injunctive relief is necessary and appropriate to require Defendants to: (i) discontinue advertising, marketing, packaging and otherwise representing Trader Joe's Alkaline branded water; and (ii) to correct any erroneous impression consumers may have derived concerning the nature, characteristic, or qualities of the Trader Joe's Alkaline branded water, including without limitation, the placement of corrective advertising and providing written notice to the public.  Plaintiff

99.  In addition, this suit may be maintained as a class action under Fed. R. Civ. Pro. 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable.  The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individually litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.

## COUNT I

### Breach of Express Warranty

### (Asserted on Behalf of Nationwide Class and California Subclass against all Named Defendants and DOES 1-10)

100.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101.  Plaintiff, and each member of the Class, formed a contract with Defendants at they time they purchased Defendants' Trader Joe's Alkaline Water bottled water.  The terms of that contract include the promises and affirmations of fact made by Defendants on the labels of Defendants' alkaline water and through the advertising and marketing campaign, as alleged above.  The Trader Joe's Alkaline branded water labeling and advertising constitute express warranties, are part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Classes, on the one hand, and Defendants, on the other.

102.  Alternatively, privity was established between Defendants and Plaintiff and Class Members because Defendants, and/or their agents, were substantially, if not

completely responsible for directly promoting and marketing Defendants' Trader Joe's Alkaline branded water to Plaintiff and Class Members and Plaintiff and Class Members were directly promoted to and marketed to by Defendants prior to purchasing Defendants' Trader Joe's Alkaline branded water, resulting in the purchase of Defendants' Trader Joe's Alkaline branded water by Plaintiff and the Class members.  By virtue of this direct promotion and marketing to Plaintiff and Class Members, Defendants directly made an express warranty of the Trader Joe's Alkaline Water brand water's attributes and benefits to Plaintiff and the Class Members.

103.  All conditions precedent to Defendants' liability under the warranty have been performed by Plaintiff and the Classes.

104.  Defendants breached the terms of the express warranty by not providing a product that provided the benefits promised.  The statements made by Defendants that warranted Defendants' claims of the Trader Joe's Alkaline Water having a superior nature, attributes and benefits were not "puffery" or mere opinion – they were statements affirmations of specific benefits and superior performance over alternative and lower priced sources of water, allegedly based on scientific study.

105.  Specifically, there is no metabolic explanation supporting the notion that Trader Joe's water helps a consumer attain the "perfect balance," or "hydrate" and "refresh."  This is particularly illuminating in that Trader Joe's features this product adjacent to its "ordinary" water product in stores nationwide, that includes no statements about "hydrate" or "refresh."  The warranties are false because the Product does not "hydrate" but instead has a deleterious effect and health consequences on those that consume it.

106.  As pled above, Trader Joe's represents its water is "alkaline water," when this is false in that water highly charged with electrolysis is not considered by chemists to be "alkaline water." Thus, this representation is affirmatively false in the alternative because the implication is that the water is alkaline water balanced by

electrolysis when this is false.

107.   Next, Trader Joe's falsely claims "pH 9.5+" even though the actual pH at the time of purchase and consumption was far less on the pH scale for Plaintiff. Plaintiff has pled the particulars of her testing, and her review of the support for these contentions  in the factual section, which are incorporated herein.

108.   The exact terms of the warranty are "ionized to achieve the perfect balance," "pH +9.5," "alkaline water," "the higher the pH, the greater the alkalinity"

109.   The exact off-label terms are taken from the fearless flyer – "whether you've just eaten an abundancy of corn or cranberries (foods high in acid), or you've been sweating profusely, Alkaline Water + electrolytes is a drink that can satisfy."

110.   Plaintiff and Class Members relied on these representations by Defendants in purchasing Trader Joe's Alkaline branded water instead of less expensive, but equally or more effective water.

111.   Plaintiff's reliance was reasonable in that "satisfy" meant it would counterbalance eating foods high in acid or would help with performance.

112.   Plaintiff's reliance was reasonable in that "ionized to achieve the perfect balance" cannot refer to the Product.

113.   Plaintiff's reliance was reasonable in that "pH 9.5+" is a warranty that the water will at a pH of 9.5 or greater when it is reasonably consumed within consumer expectations."

114.   Defendant breached the various warranties made in the on-label and off-label representations by: (a) not providing a product of "pH of 9.5+", by (b) not providing "alkaline water" as the ions were merely altered through electrolysis; (c) by not achieving the perfect balance in that the Product is not any one specific pH; (d) by not achieving the perfect balance in that it did not alter Plaintiff's internal pH balance; (e) did not "satisfy" the counter effects of foods high in acids, (f) did not hydrate or help hydrate based on profuse sweating.

115. The breaches of the warranty proximately caused Plaintiff's injury.

116. As a result of Defendants' breaches of warranty, Plaintiff and the Classes have been damages and injured in the amount of the purchase price of Defendants' Trader Joe's Alkaline branded water they purchased, and have suffered other damages to be determined by proof at trial.

## COUNT II

### Unjust Enrichment

### (Asserted on Behalf of Nationwide Class and California Subclass against all Named Defendants and DOES 1-10)

117. Plaintiff incorporates by reference all of the above paragraphs of this

118. Complaint as though fully stated herein.

119. This claim is asserted in the alternative on behalf of Plaintiff and Class members to the extent that any contracts do not govern the entirety of the subject matter of the dispute with Defendants.

120. Plaintiff and Class members conferred a tangible economic benefit upon Defendants by purchasing the Trader Joe's Alkaline branded water.  Plaintiff and Class members would have expected remuneration from Defendants at the time this benefit was conferred had they know that the Trader Joe's Alkaline branded water did not perform as promised.

121. As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and the Class members.

122. It would be inequitable for Defendants to retain profits, benefits and other compensation obtained by its wrongful conduct in marketing and selling of the Trader Joe's Alkaline Water.

123. Plaintiff, on behalf of herself and Class members, seeks restitution from Defendants, and an order of this Court disgorging all profits, benefits and other

compensation obtained by Defendants from their wrongful conduct.

## COUNT III

**Violations of Consumer Legal Remedies Act and Various Consumer Protection Acts of Other States**

**(Asserted on Behalf of Nationwide Class and California Subclass against all Named Defendants and DOES 1-10)**

124.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

125.   This is a claim for relief under the Consumer Legal Remedies Act, as well as the various Consumer Protection Acts of the jurisdiction in which Class Members are present and purchased Trader Joe's Alkaline Water, including but not limited to:

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.   Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

e.   Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

f.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

g.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

h.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*

FIRST AMENDED COMPLAINT – CLASS ACTION

1    § 501.201, *et. seq.*;

2    i.    Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

3    j.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised
4          Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade
5          Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

6    k.    Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

7    l.    Illinois Consumer Fraud and Deceptive Business Practices Act,
8          815 ILCS § 505/1, *et. seq.*;

9    m.    Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et.*
10         *seq.*;

11   n.    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§
12         367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act,
13         Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

14   o.    Louisiana Unfair Trade Practices and Consumer Protection Law,
15         La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

16   p.    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et.*
17         *seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev.
18         Stat. Ann. 10, § 1211, *et. seq.*;

19   q.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen
20         Laws ch. 93A;

21   r.    Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

22   s.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§
23         325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade
24         Practices Act, Minn Stat. § 325D.43, *et. seq.*;

25   t.    Mississippi Consumer Protection Act, Miss. Code An.. §§ 75-24-1,
26         *et. seq.*;

27   u.    Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010,

*et. seq.*;

v.     Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

w.    Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

x.     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

y.     New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

z.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

aa.    New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

bb.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 and 350 *et. seq.*

cc.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd.    Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg.    Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh.    South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii.   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj.   Tennessee Consumer Protection ct, Tenn. Code Ann. § 47-18-101 *et. seq.*;

kk.   Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll.   Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm.   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

("Consumer Protection Acts").

126.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this FAC, including but no limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of Trader Joe's Alkaline Water constitute violation of the provision of the CLRA and the various Consumer Protection Acts.

127.   The Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the Class and Subclass acting reasonably in their reliance on defendant's acts and practices, and to their detriment.

128.   The Defendants engaged in the unconscionable, unfair, and deceptive acts or practices set forth in this Complaint in the conduct of trade or commerce.

129.   The Defendants' misrepresentations or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers

or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and Class Members regarding Defendants' products.

130. The Defendants' business practice, in its advertising, marketing, packaging, labeling, and sales of its Trader Joe's Alkaline Water as unique and superior products justifying substantially higher prices over alternative sources of water, such as normal bottled water, is an unconscionable, unfair, and deceptive act or practice, in violation of the CLRA (and other Consumer Protection Acts), in that it (1) offends established public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) is substantially injurious and caused actual damages to consumers, including Plaintiff and Class Members who purchased Defendants' Trader Joe's Alkaline Water because of Defendants' representations and conduct.

131. Plaintiff and Class Members have suffered actual damages as a result of Defendants' violation of the CLRA and the various Consumer Protection Acts and are entitled to relief.

132. As a direct and proximate cause of Defendants' violations of the CLRA and the various Consumer Protection Acts, Plaintiff and Class Members have incurred harm and damages as described herein are entitled to recover for those damages, including but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to California law, and the various Consumer Protection Acts.

## **COUNT IV**

(Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.*)

(Asserted on Behalf of Nationwide Class and California Subclass against all Named Defendants and DOES 1-10)

133. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

134.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

135.   The acts, omissions, misrepresentations, practices, and non-disclosures of Trader Joe's as alleged herein constitute business acts and practices.

136.   A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test. As set forth herein, Trader Joe's claims relating to The Alkaline Water Product is likely to deceive reasonable consumers and the public.

Unlawful

137.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

• The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et. seq.;

• The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et. seq.;

• The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et. seq., and specifically § 343(a) (prohibiting food labeling that is "false or misleading in any particular"); and

• The California Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code §§ 109875 et. seq.

Unfair

138.   Trader Joe's conduct with respect to the labeling, advertising, and sale of the Alkaline Water Product is unfair because Trader Joe's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

139.   Trader Joe's conduct with respect to the labeling, advertising, and sale of the Alkaline Water Products was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law.

140.   Trader Joe's conduct with respect to the labeling, advertising, and sale of the Alkaline Water Products was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

141.   Trader Joe's conduct was unfair and unreasonable in that it has known that scientifically, the claims made are affirmatively false, and impossible to produce the represented result both in pH number, and in represented benefits.

142.   Trader Joe's profited from its sale of the falsely, deceptively, and unlawfully advertised Alkaline Water Products to unwary consumers.

143.   Plaintiff and Class Members are likely to be damaged by Trader Joe's continued deceptive trade practices, as Trader Joe's continues to falsely advertise and sell the Alkaline Water Products. Thus, injunctive relief enjoining this deceptive practice is proper.

144.   Trader Joe's conduct caused and continues to cause substantial injury to plaintiff and the other Class Members, who have suffered injury in fact as a result of Trader Joe's unlawful conduct.

145.   In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself, the Class, and the general public, seeks an order enjoining Trader Joe's from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

146.   Plaintiff, on behalf of herself and the Class also seeks an order for disgorgement and restitution of all monies from the sale of the Alkaline Water Products, which were unjustly acquired through acts of unlawful competition.

///

///

///

///

## **COUNT V**

(Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et. seq.*)

(Asserted on Behalf of Nationwide Class and California Subclass against all Named Defendants and DOES 1-10)

147.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

148.   Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

149.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Trader Joe's relating to the Product misled consumers acting reasonably as to whether the Product is "alkaline water," whether it is "ionized to achieve the perfect balance," whether it provided alkalinity of "9.5+," whether the representation the higher the "pH the higher the alkalinity" was true even though the chemical make-up was changed based on electrolysis, not based on alkalinity, whether the scale was false in that Trader Joe's bottled spring water is the same (or similar) alkalinity as Trader's Joe's Alkaline Water even though the "Alkaline water" is significantly more expensive.

150.   Plaintiff suffered injury in fact as a result of Trader Joe's actions as set forth herein because Plaintiff purchased the Product in reliance on Trader Joe's false and misleading marketing claims that the Product was ionized to achieve the perfect balance, was a pH of 9.5+, etc.

151.   Trader Joe's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Trader

Joe's has advertised the Product in a manner that is untrue and misleading, which Trader Joe's knew or reasonably should have known.

152. Trader Joe's profited from its sales of the falsely and deceptively advertised Alkaline Water Products to unwary consumers.

153. As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Trader Joe's was unjustly enriched.

## COUNT VI

(Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)

(Asserted on Behalf of Nationwide Class and California Subclass against all Named Defendants and DOES 1-10)

154. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

155. Trader Joe's, through its acts set forth herein, in the sale, marketing, and promotion of the Alkaline Water Product, made representations to Plaintiff and the Class that, among other things, the Product creates a "perfect balance" and has alkalinity of 9+, and that one could "refresh and hydrate" with + symbols superimposed on the Product's packaging.

156. As pled above, Trader Joe's represents its water is "alkaline water," when this is false in that water highly charged with electrolysis is not considered in science to be "alkaline water." Thus, this representation is affirmatively false in the alternative in that the implication is that the water is balanced by electrolysis when this is false.

157. Next, Trader Joe's falsely claims "pH 9.5+" even though the actual pH at the time of purchase and consumption was far less on the pH scale for Plaintiff. Plaintiff has pled the particulars of her testing, and her review of the support for these contentions in the factual section, which are incorporated herein.

158.   The exact terms of the warranty are "ionized to achieve the perfect balance," "pH +9.5," "alkaline water," "the higher the pH, the greater the alkalinity"

159.   The exact off-label terms are taken from the fearless flyer – "whether you've just eaten an abundancy of corn or cranberries (foods high in acid), or you've been sweating profusely, Alkaline Water + electrolytes is a drink that can satisfy."

160.   Plaintiff and Class Members relied on these representations by Defendants in purchasing Trader Joe's Alkaline branded water instead of less expensive, but equally or more effective water.

161.   Plaintiff's reliance was reasonable in that "satisfy" meant it would counterbalance eating foods high in acid or would help with performance.

162.   Plaintiff's reliance was reasonable in that "ionized to achieve the perfect balance" cannot refer to the Product.

163.   Plaintiff's reliance was reasonable in that "pH 9.5+" is a warranty that the water will at a pH of 9.5 or greater when it is reasonably consumed within consumer expectations."

164.   Defendant breached the various warranties made in the on-label and off-label representations by: (a) not providing a product of "pH of 9.5+", by (b) not providing "alkaline water" as the ions were merely altered through electrolysis; (c) by not achieving the perfect balance in that the Product is not any one specific pH; (d) by not achieving the perfect balance in that it did not alter Plaintiff's internal pH balance; (e) did not "satisfy" the counter effects of foods high in acids, (f) did not hydrate or help hydrate based on profuse sweating.

165.   The breaches of the warranty proximately caused Plaintiff's injury.

166.   Trader Joe's is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

167.   However, Trader Joe's breached that implied warranty in that the does not create the perfect balance, and does not create any health benefit, as set forth in detail herein.

168.   As an actual and proximate result of Trader Joe's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Trader Joe's to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods, in violation of Cal. Com. Code § 2314(2)(f).

169.   Plaintiff notified Trader Joe's of the breach prior to filing, but Trader Joe's failed to rectify the breach.

170.   As a result, plaintiff seeks, on behalf of herself and other Class Members, actual damages arising as a result of Trader Joe's breaches of implied warranty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all members of the Classes defined herein, prays for judgment as follows:

a.   Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Classes and her counsel as Class counsel;

b.   A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) discontinue advertising, marketing, packaging and otherwise representing Trader Joe's Alkaline branded water as having benefits that they do not have; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to the prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Trader Joe's Alkaline branded water, including without limitation, the placement of corrective advertising and providing written notice to the public;

c.   An order requiring imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to the Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statute or regulations, or constituting unfair competition or false advertising;

d.   Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct;

e.   Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

f.   Statutory pre-judgment and post-judgment interest on any amounts;

g.   Reasonable attorneys' fees as may be allowable under applicable law;

h.   Costs of this suit; and

i.   Such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: December 11, 2018        By: */s/ Blake J. Lindemann*

**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone:  (310)-279-5269
Facsimile:  (310)-300-0267
E-mail:      blake@lawbl.com

Attorneys For Plaintiff
DANA WEISS, AND ALL THOSE SIMILARLY SITUATED

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  December 11, 2018          By: */s/ Blake J. Lindemann*

**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone:  (310)-279-5269
Facsimile:   (310)-300-0267
E-mail:       blake@lawbl.com

Attorneys For Plaintiff
DANA WEISS, AND ALL THOSE SIMILARLY
SITUATED

## **PROOF OF SERVICE**

I, the undersigned, declare: I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210.

On December 11, 2018, I served the foregoing document as follows:

### **FIRST AMENDED COMPLAINT – CLASS ACTION**

[X] by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such electronic filing to counsel of record for all parties by operation of the Court's CM/ECF System.

[   ] by U.S. Mail in the ordinary course of business to the non-CM/ECF participants indicated on the attached Manual Notice List. I am readily familiar with the Firm's practice for the collection and processing of correspondence for mailing with the Postal Service and that the correspondence would be deposited with same that same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. Executed on December 11, 2018, at Beverly Hills, California.

By: _/s/ Nataly Grande_____

Nataly Grande