DAWN SESTITO (S.B. #214011)
dsestito@omm.com
R. COLLINS KILGORE (S.B. #295084)
ckilgore@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendant
Trader Joe's Company

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DANA WEISS, an individual, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY, a California Corporation; and DOES 1 through 10,<br><br>Defendant. | Case No. 18-cv-01130-JLS-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Josephine L. Staton<br>Courtroom: 10A<br>Date: March 8, 2019<br>Time: 10:30AM |

# TABLE OF CONTENTS

Page(s)

MEMORANDUM OF POINTS & AUTHORITIES ................................................. 1

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL HISTORY .................................................................................. 2

III. ARGUMENT ........................................................................................................ 5

    A. Legal Standard ................................................................................................ 5

    B. Plaintiff Fails to Plead Her pH-Level Allegation with the Required Particularity .................................................................................................... 5

    C. Plaintiff Improperly Repleads Allegations This Court Held Nonactionable as a Matter of Law ................................................................ 10

    D. Plaintiff's Other Conclusory Assertions Regarding the Product's Alkalinity Do Not Support Her Claims ...................................................... 12

IV. CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aloudi v. Intramedic Research Grp., LLC*,
    729 Fed. App'x 514 (9th Cir. 2017)..................................................................9

*Audette v. Int'l Longshoremen's & Warehousemen's Union*,
    195 F.3d 1107 (9th Cir. 1999)........................................................................11

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................5, 10

*Bitton v. Gencor Nutrientes, Inc.*,
    654 Fed. App'x 358 (9th Cir. 2016)................................................................9

*Bonin v. Calderon*,
    59 F.3d 815 (9th Cir. 1995)...........................................................................13

*Brazil v. Dole Food Co.*,
    935 F. Supp. 2d 947 (N.D. Cal. 2013).............................................................5

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011)........................................................................6

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
    765 F. Supp. 1467 (C.D. Cal. 1991)................................................................5

*Hunt v. Sunny Delight Beverages Co.*,
    Case No. 8:18–cv–00557–JLS–DFM, 2018 WL 4057812 (C.D. Cal. Aug. 23, 2018) .........................................................................................5

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
    Case No. CV 16–1442 PSG (MRWx), 2018 WL 1616053 (C.D. Cal. Mar. 8, 2018)..........................................................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).....................................................................5, 6

*Route v. Mead Johnson Nutrition Co.*,
    No. CV 12–7350–GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21, 2013).........................................................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ............................................................................. 6

*Tubbs v. AdvoCare Int'l, LP*,
   Case No. CV 17–4454 PSG (AJWx), 2017 WL 4022397 (C.D. Cal.
   Sept. 12, 2017) ................................................................................................. 9

*Turner v. City & Cty. of S.F.*,
   788 F.3d 1206 (9th Cir. 2015) ........................................................................... 5

*Union Pac. R.R. Co. v. Coast Packing Co.*,
   236 F. Supp. 2d 1130 (C.D. Cal. 2002) ........................................................... 11

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................. 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 5

**Regulations**

21 C.F.R 114.90 ................................................................................................. 7, 8

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION**

This Court's Order to Plaintiff Dana Weiss was clear: Amend your complaint, focus on a single claim, and support that claim with something more substantial than internet research and your own home testing. But Plaintiff's First Amended Complaint ("FAC") defies those clear instructions. It rehashes a bevy of dismissed claims and, on the lone remaining issue, raises allegations that the Court warned were not only insufficient, but potentially grounds for sanctions.

This Court already dismissed the bulk of Plaintiff's claims regarding Trader Joe's Alkaline Water, finding them nonactionable as a matter of law. The Court gave Plaintiff leave to amend a single claim, but Plaintiff's FAC nevertheless recycles each of these non-actionable allegations. The Court also cautioned Plaintiff about using flimsy allegations to back the sole claim not already dismissed. And yet the FAC relies on the very allegations the Court warned about and likened to conspiracy theories questioning the moon landing. In light of Plaintiff's ill-advised refusal to heed the Court's Order dismissing the original Complaint, this Motion to Dismiss should be granted and the FAC dismissed with prejudice.

*First*, Plaintiff's factual support for her only actionable claim, that the Product falsely states its pH level, is just the sort of "rudimentary testing" and "internet" sources the Court "seriously question[ed]." Plaintiff alleges she tested the water at home with a meter, but pleads no facts to support that she complied with, for example, Food and Drug Administration guidance on operating and calibrating such pH meters. Plaintiff also cites a blog post from a company that sells in-home alkalizers (and thus competes with bottled alkaline water), reliance on which appears to violate Rule 11. The blog post asserts that three "reviewers"—"Mark," "John," and "Kiki Beckler"—reported that Trader Joe's Alkaline Water tested at a pH lower than 9.5. Yet the blog post fails to indicate who these

"reviewers" are, when or how they tested the Alkaline Water, on what basis anyone could conclude their tests are reliable, or even that the product the "reviewers" tested was in all cases Trader Joe's Alkaline Water. Plaintiff's reliance on the blog post to plead fraud is questionable at best and grossly inadequate to meet her heightened pleading burden under Federal Rule of Civil Procedure 9(b).

***Second***, the Court denied leave to amend Plaintiff's other claims, yet Plaintiff repeats allegations and asserts new facts and arguments contending that Trader Joe's made false health claims by using the phrases "refresh and hydrate" and "ionized to achieve the perfect balance" and by picturing plus signs on the label. This Court already considered and dismissed these allegations and made clear any amended complaint could not be based on these alleged misrepresentations. Plaintiff's inclusion of these allegations and arguments violates the Court's Order and constitutes an improper request for reconsideration.

***Finally***, Plaintiff's new allegations that Trader Joe's 9.5+ pH water is not actually alkaline similarly fail because they do not rely on any alleged facts, have been resolved by the Court's Order, or are contradicted by Plaintiff's own allegations.

For these reasons, Trader Joe's respectfully seeks an order dismissing Plaintiff's FAC with prejudice.

## II.   PROCEDURAL HISTORY

On June 26, 2018, Plaintiff Dana Weiss filed a consumer class action against Trader Joe's.[1] (Compl. ¶ 2.) Plaintiff alleged that Trader Joe's falsely advertised

---

[1] The Complaint alleged the following six causes of action: (1) breach of express warranty; (2) unjust enrichment; (3) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (4) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) violations of California's False Advertising Law ("FAL"), *id.* § 17500 *et seq.*; and (6) breach of implied warranty of merchantability in violation of Cal. Com. Code § 2314(2)(f).

its Alkaline Water ("the Product") by labeling it (i) with hundreds of plus symbols and the words "ionized to achieve the perfect balance" and "refresh and hydrate"; and (ii) as having a pH of at least 9.5 when the pH was allegedly lower. (Compl. ¶¶ 2, 21, 23, 47.) Plaintiff argued the Product's labeling amounted to "false health claim[s]" intended to mislead consumers into purchasing alkaline water at a premium price over ordinary bottled water. (Compl. ¶ 4.)

The Court granted Defendant's Motion to Dismiss on November 20, 2018. (Dkt. 23.) The Court found that "most of Defendant's representations are nonactionable" under the California CLRA, UCL, and FAL because "they either amount to puffery or otherwise would not deceive a reasonable consumer as a matter of law." (Order Granting Def.'s Motion to Dismiss "Order" at 5.) Specifically, the Court found: (i) the word "refresh" is a "vague, generalized assertion incapable of being proved false or of being reasonably interpreted as a statement of objective fact" (*id.* at 9); (ii) the plus symbols "make no specific or measurable claim and thus are mere puffery" (*id.*); (iii) the statement that the Product "hydrates" makes no claim "as a superior source of hydration" and Plaintiff "admits that the actual statement on the label—that the Water 'hydrate[s]'—is true" (*id.* at 9–10); (iv) a reasonable consumer would understand the label's claim that the Product "is purified through reverse osmosis then ionized to achieve the perfect balance" to mean that the Product, "not the consumer, is perfectly balanced" (*id.* at 10); (v) the Product's label "does not claim that there are any health benefits from any particular internal pH balance" (*id.* at 10); (vi) the label's statement that "pH is the measure of acidity and alkalinity. The higher the pH, the greater the alkalinity" is a "scientific fact" that "would not deceive a reasonable consumer" (*id.* at 11); and (vii) statements in Trader Joe's "Fearless Flyer" advertisement about the Product did not make representations about the Product's health benefits, and the

advertisement's claims that that the Product will "satisfy" and is "water and then some" are non-actionable puffery (*id.* at 12–13).[2]

The Court also found that Plaintiff "failed to plead" with the "particularity required under Federal Rule of Civil Procedure 9(b)" her claim that Trader Joe's Product does not have a pH level of 9.5 or higher. (*Id.* at 5, 13–14.) The Court found the Complaint "devoid of *any* basis for [Plaintiff's] assertion that the 9.5 pH representation is false." (*Id.* at 14.) At the hearing on Trader Joe's Motion to Dismiss the original Complaint, Plaintiff's counsel indicated Plaintiff could plead support for her claim based on "videos on the internet" and "personally testing" the water. (*Id.* at 14.) The Court cautioned not only that it "seriously questions Plaintiff's decision to bring this suit if the only support she has for this claim is what she has seen on the internet, or her own rudimentary testing," but also that attorneys can be sanctioned for presenting "factual contentions [that] have [no] evidentiary support." (*Id.* n.5.) Plaintiff's allegations were insufficient under Rule 9(b) because Plaintiff did not include any factual support in her Complaint and failed to plead as to when she observed the Product's pH level at below 9.5—"was it when it was bottled, when it was purchased, or when it was consumed?" (*Id.* at 14.)

Finally, the Court dismissed Plaintiff's allegations of breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment. The Court found that the Product's label makes no claims of providing superior health benefits compared to typical water and that Plaintiff failed to adequately plead her claim that the Product fails to offer a pH of 9.5 or higher. (*Id.* at 15–16.)

---

[2] Although the Court dismissed Plaintiff's claims because Defendant's representations would not deceive a reasonable consumer as a matter of law, the Court alternatively found that Plaintiff's Complaint advanced, at least in part, "impermissible lack of substantiation claims." (Order at 5.)

The Court granted Plaintiff leave to amend, "but only as to the 9.5 pH balance representation" and counseled that any amended complaint "cannot be based on any alleged misrepresentation that the Court concluded was nonactionable as a matter of law." (*Id.* at 5, 17.)

## III.   ARGUMENT

### A.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6); *Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015). Claims that hinge on fraud, like those asserted here, must be pleaded with particularity under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963–64 (N.D. Cal. 2013) (applying Rule 9(b) to CLRA, FAL, and UCL claims); *see Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1470–71 (C.D. Cal. 1991). Under Rule 9(b)'s heightened pleading standard, the complaint must allege the "who, what, when, where, and how of the misconduct charged." *Hunt v. Sunny Delight Beverages Co.*, Case No. 8:18–cv–00557–JLS–DFM, 2018 WL 4057812, at *5 (C.D. Cal. Aug. 23, 2018) (internal quotations and citations omitted); *see also Kearns*, 567 F.3d at 1124. The plaintiff must "set forth what is false or misleading about a statement, and why it is false." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1123 (C.D. Cal. 2010) (internal quotations and citations omitted).

### B.   Plaintiff Fails to Plead Her pH-Level Allegation with the Required Particularity

The Court granted Plaintiff leave to amend on a single claim—the unsubstantiated assertion that the Product's label misrepresents its pH level.

Plaintiff again fails to plead a colorable case. Her only factual support for the assertion is a purportedly self-conducted pH test and a citation to a blog post: precisely the type of allegations the Court warned Plaintiff against relying on. As Plaintiff has proffered no expert testing, reports, or other plausible indications that the Product is anything other than 9.5 pH, claims predicated on that alleged misrepresentation fail and should be dismissed.[3]

Plaintiff's reliance on a blog post to allege that "[m]ost of the reviewers who tested Trader Joe's Product found it to be at a pH of 6" is particularly outrageous. (FAC ¶ 68.) The blog post, which appears on the website of a company that sells an in-home water alkalizer that competes with bottled alkaline water, concludes by urging customers to buy the publisher's own product rather than Trader Joe's Product. (*See* Declaration of Collins Kilgore in Support of Defendant Trader Joe's Company's Motion to Dismiss, or, in the alternative, Motion to Strike FAC ("Kilgore Decl."), Ex. 2.) The blog post quotes unsourced complaints from three vaguely identified reviewers—"Mark," "John," and "Kiki Beckler"— who it claims tested the Product and found its pH was lower than advertised. (*Id.*) The blog post includes the following "review" by "Mark":

> Two different bottles from two different stores. The label on the bottles implies that the water inside is pH 9, alkaline. The water in both bottles measures pH 6.2, which is a slightly acid. Either the bottles are not labeled correctly or the wrong water was bottled. Caveat emptor. (*Id.*)

---

[3] Under Rule 9(b), a plaintiff must plead with particularity "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted); *see Kearns*, 567 F.3d at 1124. This "prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants . . . from the harm that comes from being charged with the commission of fraudulent acts." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The blog quotes "John" as stating, "[i]f you're gonna buy bottled water, and you have acid reflux, this is the way to go. Mine 'TESTED' at 9." (*Id.*) The "review" by "Kiki Beckler" states:

> I tested several batches with two different brands of ph test strips and ALL BOTTLES tested at around 6.5. That wouldn't be a problem except for the fact that Trader Joe's clearly has it labeled ph 9.5 plus. (*Id.*)

The blog post does not indicate who the "reviewers" are, when or how they tested the Product, or even that the product tested was in all cases Trader Joe's Product. For instance, "Mark" and "John" do not mention Trader Joe's, and "Mark" describes alkaline water that "implies" a pH of 9 while Trader Joe's Product is labeled as 9.5 pH. (*Id.*) Even if the "reviewers" actually tested the Product, it is unlikely the results of those tests were accurate. One "reviewer," "Kiki Beckler," claims to have tested the Product using paper testing strips, which do not provide reliable results for alkaline substances. *See* 21 C.F.R. 114.90 (providing that colorimetric methods like pH indicator paper may only be used if the tested substance is acidic and has a pH of 4.0 *or lower*) (emphasis added). It is difficult to fathom that blind reliance on a blog post asserting unspecified, unverified testing can satisfy Rule 11's requirement to conduct an "inquiry reasonable under the circumstances" before filing a complaint. Plaintiff's reliance on the blog post is made more outrageous by the Court's deep skepticism, expressed during oral arguments on the Motion to Dismiss, about the adequacy of such information: "So now you think that the attorney's obligation to investigate before they allege is going to be satisfied by an [i]nternet search? I can find things that say we never really landed on the moon, too." (Mot. to Dismiss Hearing Tr. at 16:7-11 (Nov. 2, 2018).)

       Plaintiff's own purported testing of the Product similarly falls short. Plaintiff claims to have tested the Product at her home using a "PH-02 'pen type pH meter'

made by manufacturer Zacro" within a week of purchasing the Product. (FAC ¶¶ 65–67.) She provides no details about how the testing was conducted, how the Product was stored and handled after purchase, how many bottles she tested, or other indications that her testing method was sound. These oversights call into question the validity of Plaintiff's test and her conclusion that Trader Joe's has falsely represented the pH of its Product.

For example, Plaintiff pleads no facts to suggest that her home testing of the Product conforms to guidance from the Food and Drug Administration in its regulations on pH testing. The FDA recommends that for each measurement of food substances a pH meters be put through a rigorous preparation and calibration process that includes the following steps: (i) allow the instrument to warm up before performing testing; (ii) immerse the instrument in a 4.0 pH buffer or freshly prepared 0.05 molar potassium acid phthalate buffer solution for one minute to calibrate the meter until the meter is balanced to the pH of the buffer for at least two successive trials; (iii) following calibration, rinse and blot (not wipe) the instrument; (iv) make sure both the sample and the instrument are both at room temperature or at the same temperature and that the sample is well-mixed; and (v) immerse the instrument in the sample, taking at least two measurements to ensure the sample is homogeneous. 21 C.F.R. 114.90. The agency also recommends "clean[ing] and standardiz[ing] the instrument frequently" because other tested substances can foul the instrument. *Id*.

Plaintiff's home testing falls short of the FDA's recommendations. For example, Plaintiff alleges that she used her meter to test tap water. (FAC ¶ 66.) If she had tested tap water or any other substance more acidic than 9.5 pH before testing the Product, she would have tainted the sample unless she cleaned and recalibrated the meter in between samples. She does not indicate that she properly calibrated her meter with a buffer solution, blotted the meter dry, made sure that the

Product was well mixed and at room temperature before testing, or that she performed successive tests and obtained an identical result.

Plaintiff's FAC includes no independent lab tests, scientific studies, or reports corroborating her home testing—materials Plaintiff has had ample time to commission.[4] *See Aloudi v. Intramedic Research Grp., LLC,* 729 Fed. App'x 514, 516 (9th Cir. 2017) (dismissing plaintiff's false advertising claims when plaintiff failed to present any "scientific testing of the actual [] product or a product with the same active ingredients" establishing the falsity of defendant's statements); *Bitton v. Gencor Nutrientes, Inc.*, 654 Fed. App'x 358, 361–62 (9th Cir. 2016) (plaintiff sufficiently alleged false advertising when he appended to his complaint an "expert report" disproving defendants' claims); *Tubbs v. AdvoCare Int'l, LP*, Case No. CV 17–4454 PSG (AJWx), 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017) (dismissing plaintiff's false advertising claims when plaintiff cited three articles that failed to reference the defendant's product); *Route v. Mead Johnson Nutrition Co.*, No. CV 12–7350–GW(JEMx), 2013 WL 658251, at *4–6 (C.D. Cal. Feb. 21, 2013) (dismissing plaintiff's false advertising claims when she cited "one paper" discussing evidence supporting and against defendant's product representations).

Finally, the FAC asserts that the Product's pH level degrades over time because "[d]egradation of pH ions is an accepted fact." (FAC ¶¶ 72–75.) But Plaintiff provides no source for this assertion and alleges no facts indicating that the pH in the Product degrades at all or has degraded to a pH of less than 9.5 at the time of consumption by any putative class members.

---

[4] Plaintiff sent notice of her claim to Trader Joe's over two years ago. (*See* FAC Ex. 9 at 1.) In that time, she has opted not to commission testing by a laboratory or expert, even after the Court advised at the November 2, 2018 hearing and in its Order that more is required than Plaintiff's own "rudimentary testing." (Order at 14, n.5.)

These 9.5 pH allegations fail to meet the heightened pleading requirements imposed by Rule 9(b).[5]  Plaintiff's home testing together with an unsubstantiated blog post do not plead a sufficient basis that the pH of the Product has been misrepresented.  The 9.5 pH claims should be dismissed with prejudice.

### C. Plaintiff Improperly Repleads Allegations This Court Held Nonactionable as a Matter of Law

Flouting the Court's clear directive that an amended complaint be limited to the 9.5+ pH claim, Plaintiff's FAC improperly realleges the same misrepresentations already found to be nonactionable.  (*See* Order at 5.)  In fact, Plaintiff admits that she presents allegations at Paragraphs 23–64 of the FAC about the Product's alleged health representations merely to "preserve the record, and to avoid any legal argument that the perceived basis of leave to amend had been misconstrued." (FAC ¶ 2.)

Plaintiff's defunct claims that the Product promises health benefits by displaying terms like "refresh," "hydrate," and "achieve the perfect balance" have nothing to do with Plaintiff's assertion that the Product's pH level representation is fraudulent.  For example, Plaintiff asserts that the Product "provides no health benefit or hydration improvement," (*compare* Compl. ¶ 20, *with* FAC ¶ 77), that statements in Trader Joe's Fearless Flyer are false and misleading (*compare* Compl. ¶ 22, *with* FAC ¶ 79), and that the statements "ionized to achieve the perfect

---

[5] The allegations also fail to satisfy the pleading standards of Federal Rule of Civil Procedure 8 because they do not plausibly indicate that the representation of the Product's alkalinity is false. *See Twombly*, 550 U.S. at 570 (requiring plaintiff to allege "enough facts to state a claim to relief that is plausible on its face").  It is much more likely that Plaintiff's testing was inadequate, and that the blog post by a seller of a competing product does not reflect reliable tests of the product, than that Trader Joe's is systematically misstating the alkalinity of its Product.  Without alleging that Plaintiff conducted methodical and reliable testing of multiple samples of the Product from multiple lots, or any other facts indicating that Trader Joe's is engaging in widespread fraud as to the alkalinity of its Product, the plausible inference is that Plaintiff's home testing was simply inaccurate.  *See id.*

balance," "refresh and hydrate," and the "hundreds of plus symbols," are false or misleading (*compare* Compl. ¶¶ 21–22, *with* FAC ¶¶ 78–79). Plaintiff attempts to bolster these dismissed claims by attaching to the FAC numerous articles related to the health benefits and/or risks of alkaline water. (FAC ¶¶ 2, 23–29, 32–33; Exs. 1–7, 10–11.) Those articles have nothing to do with the actual pH level of the Product, and Plaintiff admits to pleading them merely to preserve the record. (*Id.*)

Plaintiff's FAC also makes improper legal arguments designed to relitigate arguments the Court already rejected. For example, Plaintiff argues that: (1) her claims are not substantiation claims (FAC ¶¶ 7, 44–46, 80); (2) she relied on her understanding that the Product would help her "achieve perfect 'balance'" (*id.* ¶ 11); (3) "perfect balance" refers to the customer's internal pH (*id.* ¶¶ 41–43); (4) the terms "perfect balance" and "satisfy" are not puffery (*id.* ¶¶ 47–48, 111, 114, 161); (5) the terms "balance" and "hydrate and refresh" are false and misleading (*id.* ¶¶ 49–53, 105, 114, 162); (6) the Product promised health benefits that it did not provide (*id.* ¶¶ 60–63, 76); and (7) the Product does not "hydrate" (*id.* ¶ 114).

These allegations violate the Court's Order and constitute an improper request for reconsideration that meets none of the requirements of the Local Rules. *See* Local Rule 7–18 (limiting grounds for motions to reconsider, including (1) "a material difference in fact or law" that could not have been known to a reasonably diligent moving party before the Court entered its decision; (2) the "emergence of new material facts or a change of law"; or (3) the Court's failure to consider material facts). As "master of [her] claim," Plaintiff had sufficient opportunity to present the factual and legal arguments necessary to support her claims. *See Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 (9th Cir. 1999); *Union Pac. R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1137–38 (C.D. Cal. 2002) ("[A] mere attempt by [the moving party] to reargue its position by directing this Court to additional law and argument[s] which [it] clearly

could have made earlier, but did not . . . is not the purpose of motions for reconsideration under Local Rule 7–18") (internal quotations and citations omitted). To the extent any claims are based on misrepresentations already dismissed with prejudice, they should be dismissed again and struck from the FAC.

### D. Plaintiff's Other Conclusory Assertions Regarding the Product's Alkalinity Do Not Support Her Claims

Plaintiff's unfounded assertion that using ionization to increase pH balance cannot create "alkaline water" is not only immaterial (given that it inherently concedes the pH level is heightened) but also fails to rely on any alleged facts, has been resolved by the Court's Order, and is contradicted by Plaintiff's own allegations.

Plaintiff asserts that "electrolysis alone . . . that results in higher pH, does not make water more alkaline." (FAC ¶ 54.) As an initial matter, this allegation appears directed at supporting Plaintiff's claim that the Product falsely claims to "achieve the perfect balance" and thus should be struck because Plaintiff did not have leave to amend as to that claim.[6] (Order at 10–11.) The allegation is immaterial to the pH 9.5 claim because even if it were true that a higher pH is not more "alkaline," that would not imply that the stated pH of 9.5+ is false. The Court has already found that it is an accepted fact that a higher pH has more alkalinity. (Order at 11.) And despite Plaintiff's protestations that a higher pH does not make water more alkaline (FAC ¶ 54), Plaintiff's own source for this assertion explains

---

[6] Similarly, Plaintiff alleges that the pH scale on the back of the Product is "affirmatively false because many sources for tap water are composed of a pH greater than 7, and even at pH of 9, naturally, whereas the consumer is led to believe through the scale, the Product provides benefits, in reality, it does not." (FAC ¶ 57.) Plaintiff's assertion that overstating the difference between the pH of tap water and the Product implies health claims is futile given that the Court has already ruled that the Product's representation of higher alkalinity does not constitute a health claim. (Order at 11.)

that water with a pH of 9.5 is "10,000%" *more alkaline* than water at a pH of 6.5. (Kilgore Decl. Ex. 2 at 3–4.)

Plaintiff also argues that ionized water is a "sales fiction" and that because Trader Joe's water is ionized, it cannot be "alkaline" as alkalinity must come from "metallic ions of some kind—most commonly sodium, calcium, or magnesium."[7] (FAC ¶ 56.) To the extent Plaintiff makes this allegation to assert that the label's use of the term "alkaline" is affirmatively false, the allegation fails for the simple reason that the Product contains electrolytes—***including magnesium***—which are exactly the sort of "metallic ions" Plaintiff concedes produce alkalinity. (Declaration of Matt Sloan in Support of Defendant Trader Joe's Company's Motion to Dismiss, or, in the alternative, Motion to Strike FAC ("Sloan Decl"), Ex. 1.)

Because none of these allegations support Plaintiff's assertion that the Product's claim to have a pH of 9.5+ or to be "alkaline" is false and misleading, and given Plaintiff's inability to save her complaint through amendment, the FAC should now be dismissed without leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, Case No. CV 16–1442 PSG (MRWx), 2018 WL 1616053, at *5 (C.D. Cal. Mar. 8, 2018) (denying plaintiffs leave to amend their first amended complaint alleging false advertising when plaintiffs failed to cure the original complaint's deficiencies specifically noted by the court).

---

[7] Plaintiff also asserts without any factual basis that "[p]ure water . . . is too unconductive to undergo significant electrolysis by 'water ionizer' devices." (FAC ¶ 56.)

## IV. CONCLUSION

Trader Joe's respectfully seeks an order dismissing Plaintiff's First Amended Complaint with prejudice.

Dated: January 16, 2019

DAWN SESTITO
O'MELVENY & MYERS LLP

By: /s/ Dawn Sestito
    Dawn Sestito
Attorneys for Defendant
TRADER JOE'S COMPANY