DAWN SESTITO (S.B. #214011)
dsestito@omm.com
R. COLLINS KILGORE (S.B. #295084)
ckilgore@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendant
Trader Joe's Company

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DANA WEISS, an individual, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY, a California Corporation; and DOES 1 through 10,<br><br>Defendant. | Case No. 18-cv-01130-JLS-GJS<br><br>**REPLY IN SUPPORT OF DEFENDANT TRADER JOE'S COMPANY'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Josephine L. Staton<br>Courtroom: 10A<br>Date: March 8, 2019<br>Time: 10:30AM |

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS & AUTHORITIES ................................................... 1

I.  INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................... 2

    A.    Plaintiff's pH-Level Allegations Are Deficient ..................................... 2

            *Reliance on the blog post is sanctionable* ............................................. 3

            *Plaintiff's in-home testing is also insufficient* ...................................... 4

            *Plaintiff's health and safety code assertion is baseless* ....................... 6

            *Plaintiff is not entitled to discovery.* .................................................... 7

    B.    Plaintiff's Allegations Related to Dismissed Claims Should be Struck ...................................................................................................... 8

    C.    Plaintiff's Other Conclusory Assertions Regarding the Product's Alkalinity Do Not Support Her Claims ................................................. 9

III. CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aloudi v. Intramedic Research Grp., LLC*,
 729 Fed. App'x 514 (9th Cir. 2017) ............................................................. 3, 6, 9, 10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................ 5, 8

*Bitton v. Gencor Nutrientes, Inc.*,
 654 Fed. App'x 358 (9th Cir. 2016) ...................................................................... 5, 6

*Bly-Magee v. California*,
 236 F.3d 1014 (9th Cir. 2001) ................................................................................. 8

*Brazil v. Dole Packaged Foods, LLC*,
 660 Fed. App'x 531 (9th Cir. 2016) ....................................................................... 10

*Brenner v. Proctor and Gamble Co.*,
 Case No. SACV 16-1093-JLS (JCG), 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) ......................................................................................................... 2

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047 (9th Cir. 2011) ................................................................................. 3

*Concha v. London*,
 62 F.3d 1493 (9th Cir. 1995) ................................................................................... 7

*In re GlenFed, Inc. Sec. Litig.*,
 42 F.3d 1541 (9th Cir. 1994) ................................................................................... 2

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ................................................................................. 5

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F. 3d 988 (9th Cir. 2018) ............................................................................... 4, 9

*Moore v. Kayport Package Express*,
 885 F.2d 531 (9th. Cir. 1989) .................................................................................. 7

*Mujica v. AirScan, Inc.*,
 771 F.3d 580 (9th Cir. 2014) ................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm, Inc.*,
   107 Cal. App. 4th 1336 (2003) ................................................................................ 5

*OSU Student Alliance v. Ray*,
   699 F.3d 1053 (9th Cir. 2012) ................................................................................ 8

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ................................................................................ 7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................ 5

**Statutes**

Cal. Health & Saftey Code §111071 .................................................................... 6, 7

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.   INTRODUCTION**

Proceeding on the very facts this Court expressly warned her against relying on, Plaintiff Dana Weiss doubles down on her frivolous positions in opposition to Trader Joe's Motion to Dismiss the First Amended Complaint. Most strikingly, Plaintiff refuses to abandon a blog post purportedly summarizing tests conducted by "Kiki Beckler," "Mark," and "John." Instead, she brazenly contends these tests by "persons on the internet" are "entirely proper and valid"—even though she cannot know who those individuals are, whether they are actual people or internet trolls, whether they conducted any testing whatsoever, and, if so, what type of test and whether they tested Trader Joe's Alkaline water or something else entirely. Plaintiff's own home testing also raises more questions than it answers because it was performed with an instrument that can produce reliable results only after a rigorous calibration process—one that Plaintiff does not suggest she followed. Plaintiff has had ample time to commission independent testing of the Product by a laboratory or other reliable third party but has either failed to do so or was unable to obtain the result she desired.

The rest of the First Amended Complaint ("FAC") fares no better. Plaintiff pleads numerous allegations for which the Court denied her leave to amend, wasting the resources of both the Court and the Parties in continuing to address these settled issues. And her new claim that Trader Joe's Product lacks metallic ions and therefore cannot be alkaline is contradicted—according to Plaintiff's own sources—by the inclusion of magnesium in the ingredient statement, a portion of the Product label she omitted from the FAC. Rather than concede these damaging facts, she asks the Court and Parties to put on blinders and avoid looking at the entirety of the Product label or scrutinizing the blog post she referenced.

With no viable claim apparent, Plaintiff argues that she needs discovery in order to plead a basis for her allegations of fraud and asserts a *new* purported

violation of a regulation applicable to water-bottling plants—and not applicable to Trader Joe's.  It is clear that Plaintiff cannot plead a proper claim against Trader Joe's.  The more information she provides, the more obvious the frivolity of this action.  The FAC should be dismissed with prejudice.

## II.   ARGUMENT

### A.   Plaintiff's pH-Level Allegations Are Deficient

The Court granted leave to amend the pH-level allegations, giving Plaintiff the opportunity to present "more facts and allege with proper particularity that the 9.5 pH representation is false." (Order Granting Def.'s Motion to Dismiss "Order" at 14.)  The Court told Plaintiff her amended complaint "must allege the factual basis for her belief" that the Product's pH is not as advertised. (*Id.*)  She failed to do so.

Instead, she continues to assert that her own in-home testing and purported test results posted on an internet blog are enough to support her claim—despite this Court's clear warning that those allegations likely would not be sufficient and could violate Rule 11.  (Mot. to Dismiss Hearing Tr. at 16:7–11 (Nov. 2, 2018); Order at 14 n.5.)  She also argues that she should not have to further substantiate her claims and should be entitled to discovery because only Trader Joe's "possesses full information" of the facts regarding the purported fraud.  (Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Dismiss or Strike Plaintiff's First Amended Complaint "Pl.'s Opp." at 5–6.)  None of these arguments satisfy this Court's demand that Plaintiff provide specific allegations of her factual basis for the pH-level allegations.  (*See* Order at 14 (citing *Brenner v. Proctor and Gamble Co.*, Case No. SACV 16-1093-JLS (JCG), 2016 WL 8192946, at *5 n.5 (C.D. Cal. Oct. 20, 2016) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by statute on other grounds) (Plaintiff's original complaint "failed 'to provide a basis for why she believes the [9.5 pH

representation] is false.'").)

***Reliance on the blog post is sanctionable.*** With a straight face, Plaintiff asserts that alleged test results publicized in a blog posted by a competing alkaline water product are "entirely proper and valid." (Pl.'s Opp. at 4.) How Plaintiff can vouch for the validity of these alleged tests is a mystery. The blog post is an advertisement by a competitor. (Declaration of Collins Kilgore "Kilgore Decl." Ex. 2 at 3.) The purported product "testers" are identified as "Kiki Beckler," "Mark," and "John." (*Id.* at 4–5.) The blog post does not provide any actual test results or indicate testing methodology, and quotes from two of the purported "testers" do not even reference Trader Joe's. (*Id.*) Plaintiff's conclusion based on the blog, that "[m]ost of the reviewers who tested Trader Joe's Product found it to be at a pH of 6," (FAC ¶ 68), is false at best and most likely sanctionable. No reasonable person would rely on the blog post to assert a fraud claim against Trader Joe's because this internet source does not plausibly indicate with the required particularity or plausibility that the Product's stated pH level is actually false. *See Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("claims of fraud . . . must, in addition to pleading with particularity, also plead plausible allegations" that state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]") (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Aloudi v. Intramedic Research Grp., LLC*, 729 Fed. App'x 514, 516–17 (9th Cir. 2017) (no "sufficiently plausible or specific claim of actual falsity" when none of plaintiff's factual support "involve[d] scientific testing of [defendant's] product" or the same active ingredient).

Indeed, Plaintiff makes no substantive attempt to defend the blog post and instead aims to obfuscate. Although Plaintiff relies upon and cites to the blog in the FAC, she urges the Court *not to consider it* or to take judicial notice of its full

contents.  Having relied on the blog post, she cannot now run away from it.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (the incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims").  Her attempt to do so confirms that no plausible inference of falsity can be taken from the blog.

***Plaintiff's in-home testing is also insufficient***.  Plaintiff has pleaded no details to suggest her in-home testing of the Product's pH was sound or that the results allow her to plausibly allege fraud with the required particularity.  Trader Joe's is entitled to question the plausibility of Plaintiff's conclusions from her home testing given the lack of any indication that Plaintiff has the know-how to conduct tests of this nature with the specified equipment and given her apparent decision to forgo an independent laboratory analysis.

For example, Plaintiff has not explained how the Product was stored and handled after purchase, how many bottles she tested, or what—if any—steps she took to calibrate her pH meter.  Plaintiff alleges only that she tested one bottle of the Product within a week of its purchase and did so "more than once."  (FAC ¶¶ 65–67.)  Plaintiff's alleged result is not corroborated by any tests of other bottles of the product—by herself or others.  Moreover, Plaintiff alleges she used a pH meter to conduct her tests but does not suggest she has the professional knowledge needed to properly conduct an alkalinity test.  As explained in the Motion, such a test requires numerous steps to calibrate the meter and ensure the test sample remains untainted.  (Memorandum of Points and Authorities in Support of Motion to Dismiss ("Mot. to Dismiss") at 8–9.)  As Plaintiff does not allege she followed any of those steps, her home test results are more likely explained by her own inexperience than by widespread fraud on the part of Trader Joe's.  *See Twombly*, 550 U.S. at 567–68 (because plaintiff failed to allege facts plausibly showing

conspiracy, defendant's actions were more likely not attributable to unlawful activity); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[1]

Plaintiff does not need to satisfy the *Daubert* standard at this stage, but she must plausibly allege with the requisite particularity that Trader Joe's engaged in fraud by misrepresenting the Product's pH. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to California's Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA) claims); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."). Although Plaintiff asserts that the pleading standards do not require her to do more, she does not cite a single federal authority suggesting that a plaintiff's amateur testing is sufficient to state a claim. Instead, she seeks to distinguish authorities in similar cases that required some sort of scientific basis for false marketing claims.

In *Bitton v. Gencor Nutrientes, Inc.*, for example, the plaintiffs attached an expert report to the complaint demonstrating the basis for their allegation that the product did not increase testosterone as advertised.[2] 654 Fed. App'x 358, 361–62

---

[1] Plaintiff also contends in her Opposition that she relied on "medical literature" in support of her claim. (Pl.'s Opp. at 9.) Plaintiff does not identify the medical literature to which she refers, but the only studies cited in the FAC pertain to her dismissed allegations that the Product promises health benefits. (FAC ¶¶ 25–27.)

[2] *King Bio*, cited in *Bitton*, assessed standards of proof in connection with defendant's motion for judgment under Cal. Civ. Proc. Code § 631.8. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm, Inc.*, 107 Cal. App. 4th 1336, 1340 (2003). *King Bio* affirmed judgment for defendant when plaintiff did not produce evidence that the marketing claims were false. *Id.* at 1348. The case did not hold that "anecdotal evidence" alone would suffice to sustain plaintiff's burden or say anything else to suggest a lower pleading burden should apply here. *Id.*

(9th Cir. 2016). Plaintiff attempts to distinguish *Bitton* on the grounds that she is not trying to "prove anything scientifically" and that the product at issue in *Bitton* was "entirely different." (Pl.'s Opp. at 9.) But Plaintiff, just like in *Bitton*, asserts that a marketing claim is false—here, Trader Joe's pH-level representation. (*See e.g.*, FAC ¶ 11.) She therefore must have a plausible factual basis upon which to assert fraud, just as in *Bitton*.[3]

Plaintiff also seeks to distinguish *Aloudi v. Intramedic Research Grp., LLC*, 729 Fed. App'x 514 (9th Cir. 2017). In *Aloudi*, the plaintiff took weight-loss pills and alleged they did not deliver their promised benefits. 729 Fed. App'x at 516–17. The court found this anecdotal evidence insufficient under Rule 9(b) because one individual's results did not plausibly "show the falsity" of the marketing claims. *Id.* at 517. And even if they did, the plaintiff failed to plead "sufficient plausible and specific factual allegations" suggesting falsity by, for example, describing his "daily caloric consumption or metabolic activity before and while taking" the product. *Id*. The circumstances here are analogous: Plaintiff has not provided enough detail about her alleged testing to conclude that even a single bottle of the Product had a pH level below 9.5, much less that her purported results apply to other bottles.

***Plaintiff's health and safety code assertion is baseless***. Unable to muster any plausible allegation that the Product's pH is not as advertised, Plaintiff attempts to blame Trader Joe's by arguing—erroneously—that Trader Joe's has failed to comply with California's Health and Safety Code section 111071. (Pl.'s Opp. at 1, 7–8.) This regulation applies only to bottled-water plants; Plaintiff has not alleged—and cannot allege—it applies to Trader Joe's. *See* Cal. Health & Safety

---

[3] In its holding, the court in *Bitton* rejected the defendant's argument that plaintiffs' assertion that its study was inadequate constituted a lack of substantiation claim. 654 Fed. App'x at 361–62. Trader Joe's makes no such argument as to the pH allegations.

Code § 111071.  Nor does Plaintiff explain how the bottled water report required of a bottled-water plant under Section 111071 would assist Plaintiff in supporting her claims that the pH of the Product is falsely advertised.  *See id.* (listing information required in such reports, not including any reference to alkalinity or pH levels).

***Plaintiff is not entitled to discovery***.  Finally, Plaintiff argues she cannot conduct "more robust testing and reporting" without cooperation from Trader Joe's and that she has been "hampered by Trader Joe's refusal to produce documents in response to Plaintiff's requests for request for production."  (Pl.'s Opp. at 1.)  Specifically, she contends that she needs access to the Product's source "so that her expert may measure the drop in pH from the date of sourcing until the date of consumption."  (*Id.* at 7.)  This contention makes no sense, as Plaintiff has not alleged—and is not entitled to discovery to show—that the Product's pH level degrades.  Rather, Plaintiff alleges only that the Product's pH is lower than advertised, an allegation she has not supported with independent testing even though the Product is publicly available and Plaintiff has had more than two years to test it.  (Mot. to Dismiss at 9 n.4.)  There is thus no basis to permit discovery on the grounds that the alleged evidence of fraud is in the defendant's exclusive possession.[4]

---

[4] This narrow rule applies "to permit discovery in a *limited* class of corporate fraud cases where the evidence of fraud is within a defendant's *exclusive* possession." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (emphasis added) (citation omitted); *see also Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (when a case of corporate fraud makes it difficult to attribute particular fraudulent conduct to each defendant as an individual, the plaintiff should allege the fraud with particularity but may allege the individual defendants' roles in the fraud on information and belief); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("Rule 9(b) thus requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access.").

1   Indeed, case law plainly demonstrates that Plaintiff is *not* entitled to use
2   discovery to salvage her otherwise deficient pleading. *See Bly-Magee v. California*,
3   236 F.3d 1014, 1018 (9th Cir. 2001) ("Rule 9(b) serves . . . to deter the filing of
4   complaints as a pretext for the discovery of unknown wrong.") (internal citations
5   and quotation marks omitted); *see also Iqbal*, 556 U.S. at 678–79 (2009) (Rule 8
6   "does not unlock the doors of discovery for a plaintiff armed with nothing more
7   than conclusions"); *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim
8   just shy of a plausible entitlement to relief can, if groundless, be weeded out early
9   in the discovery process through 'careful case management.'"); *Mujica v. AirScan,
10  Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("[P]laintiffs must satisfy the pleading
11  requirements of Rule 8 *before* the discovery stage, not after it.") (emphasis in
12  original); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) ("To
13  be sure, when a plaintiff presses an implausible claim, lack of access to evidence
14  does not save the complaint.")

### B.   Plaintiff's Allegations Related to Dismissed Claims Should be Struck

17  The majority of Plaintiff's new allegations in the FAC pertain to claims the
18  Court dismissed without leave to amend. In her Opposition, Plaintiff responds that
19  those allegations were included merely to "provide background concerning the
20  dispute" and argues that the Court can simply "disregard" the allegations and thus
21  does not need to strike them. (Pl.'s Opp. at 10–11.) Plaintiff grudgingly admits,
22  however, that the Court "appears to have ruled" that certain of the labeling
23  statements are not subject to Plaintiff's false-advertising claims and that, as to
24  these, Plaintiff "was not even given one chance to amend." (*Id*. at 10.)
25  The Court's order was unambiguous: "[T]he Court finds that most of
26  Defendant's representations are nonactionable in that they either amount to puffery
27  or otherwise would not deceive a reasonable consumer as a matter of law…. The
28

1  Court grants Plaintiff leave to amend, but only as to the 9.5 pH balance
2  representation." (Order at 5.) The FAC's voluminous allegations in defiance of
3  these clear instructions should be struck.

### C. Plaintiff's Other Conclusory Assertions Regarding the Product's Alkalinity Do Not Support Her Claims

Finally, Plaintiff's FAC includes a hodgepodge of additional unsupported conclusory allegations in the vain hope that one will stick. Most notably, Plaintiff asserts that ionization cannot increase alkalinity, which requires some sort of metallic ion such as magnesium. (FAC ¶ 56.) Trader Joe's pointed out Plaintiff's blunder—the Product's ingredient statement discloses that it indeed contains magnesium. (Mot. to Dismiss at 13.) Instead of conceding this fact, which Plaintiff cannot hope to escape if she manages to proceed past the pleading stage, Plaintiff now urges the Court to ignore the portions of the product label (including the ingredient statement) that Plaintiff omitted from the FAC as outside of the pleadings. As explained in Trader Joe's Request for Judicial Notice, not only is incorporation of a product label by reference appropriate when a plaintiff bases a complaint on labeling statements, but judicial notice of a product label is also proper where a plaintiff's complaint does not depict the entirety of the label.[5] (Defendant's Request for Judicial Notice at 3.)

The FAC also asserts that the Product's pH level degrades over time because "[d]egradation of pH ions is an accepted fact." (FAC ¶¶ 72–75.) Plaintiff provides no source for this conclusory assertion and alleges no facts indicating that the pH in the Product degrades at all or has ever degraded to a pH of less than 9.5 at the time of consumption by any putative class members. *See Aloudi*, 729 Fed. App'x at 516

---

[5] Judicial notice is particularly proper in circumstances such as these, where a plaintiff seeks to exclude referenced materials because they contain exculpatory information or otherwise undermine the plaintiff's claims. *See Khoja*, 899 F.3d at 1002.

(rejecting plaintiff's conclusory assertions that rapid weight loss from coffee-bean extract is "medically impossible" or otherwise would have caused significant weight loss in "every customer in line at Starbucks" because "none of these allegations involves scientific study of the actual…product or a product with the same active ingredient").

By cherry picking facts from her own scant pleadings, Plaintiff exposes the weakness of her allegations against Trader Joe's. When compelled to provide adequate detail, Plaintiff cannot, dooming her allegations. Plaintiff's other conclusory allegations—including that the Product's depiction of a pH scale is misleading,[6] or that water is not alkaline if its pH is raised above neutral through electrolysis alone—warrant even greater suspicion given Plaintiff's proven inability to substantiate other claims. *See Aloudi*, 729 Fed. App'x at 516 (conclusory assertions of falsity must be supported by allegations of scientific facts).

## III. CONCLUSION

Plaintiff cannot salvage her claims, which are based on dubious facts and baseless assertions. Trader Joe's respectfully seeks an order dismissing Plaintiff's First Amended Complaint with prejudice.

---

[6] Plaintiff asserts that the label's depiction of a pH scale is misleading because it implies that the other beverages are "inferior for the purposes of promoting hydration and balance." (Pl.'s Opp. at 3; FAC ¶ 57 (alleging the scale leads consumers to believe the Product provides benefits it does not have).) This allegation speaks to Plaintiff's health benefit claims for which she did not have leave to amend. Moreover, Plaintiff does not allege to have relied on the scale when making her purchasing decision. *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531, 534 (9th Cir. 2016) (affirming dismissal of plaintiff's UCL "unlawful" sale claim when defendant's statements did not influence plaintiff's purchase).

| | | |
|---|---|---|
| 1 | Dated: February 15, 2019 | DAWN SESTITO |
| 2 | | R. COLLINS KILGORE |
| | | O'MELVENY & MYERS LLP |

By: */s/ Dawn Sestito*
    Dawn Sestito
Attorneys for Defendant
TRADER JOE'S COMPANY